### CARSON v. AMBERSON.

No. 10908.

Court of Civil Appeals of Texas. San Antonio.

Feb. 19, 1941.

Rehearing Denied March 19, 1941.

Geo. M. Mayer and M. J. Arnold, both of San Antonio, for appellant.

Kemp, Lewright, Dyer, Wilson & Sorrell, of Corpus Christi, for appellee.

NORVELL, Justice.

This is the appeal of John Carson, administrator of the estate of Paul Carson, deceased, from a judgment that he take nothing as against Joe Amberson, doing business as Union Bus Lines.

█ On the night of October 30, 1938, Paul Carson, also known as Paul Karanzulis, received injuries which resulted in his death. Appellant contended that the deceased and one Bill Pappas, while returning from Kerrville to San Antonio, Texas, stopped upon the side of what is locally referred to as the Fredericksburg road for the purpose of repairing a tire upon the automobile in which they had been riding; that while so engaged, Carson was struck by a bus owned and operated by appellee. Appellant, as administrator, sued for damages for physical pain and mental anguish suffered by Paul Carson prior to his death, on November 2, 1938, and for medical and burial expenses incurred. Appellant also brought the suit for the benefit of Christ Karanzulis, the father of the deceased, alleging that the father had been damaged in being deprived of the reasonable expectations of financial support from his deceased son. Appellant's cause of action was founded upon negligence, but the jury's findings were to the effect that the driver of appellee's bus was not guilty of a negligent act which proximately caused

Paul Carson's death, and that the deceased was guilty of negligence which contributed to his injuries and resultant death.

Appellant presents six propositions of law in support of his prayer for a reversal of the trial court's judgment. The sixth proposition presents the contention, in effect, that as a matter of law, Paul Carson's death was proximately caused by the negligence of appellee's servants, and that, as a matter of law, the deceased was not guilty of contributory negligence. We hold that the evidence raised fact issues for the jury in regard to the several questions of negligence involved, and accordingly overrule appellant's sixth proposition.

By the remaining five propositions, appellant contends that this case must be reversed because of an improper argument made by appellee's counsel.

The bill of exceptions on this point contains the entire argument made by counsel but does not show that any objections were made to the argument at the time it was made. The objections or exceptions urged here were first set forth in the court below in a motion for new trial. This motion was overruled by the trial court.

█ The general rule is that "a case will not be reversed on account of improper argument before a jury unless objection is interposed at the time the argument is made." An exception to the general rule, however, applies when "the argument complained of is so plainly prejudicial that an instruction by the court to the jury not to consider the same would in all probability be of no avail." City of Pampa v. Todd, Tex.Com.App., 59 S.W.2d 114, 116; Basanez v. Union Bus Lines, Tex.Civ.App., 132 S.W.2d 432.

█ In determining the question of whether or not improper argument constitutes reversible error in the absence of a timely objection thereto, we are to consider the argument in the same light as if proper objection had been made and the trial court had admonished the jury not to consider the same. Robbins v. Wynne, Tex.Com.App., 44 S.W.2d 946; Williams v. Rodocker, Tex.Civ.App., 84 S.W.2d 556. If, when viewed in this light, it does not clearly appear that no injury could have resulted from the argument, the judgment must be reversed. Humphreys v. Roberson, 125 Tex. 558, 83 S.W.2d 311.

Bearing the above rules in mind, we examine the specific complaint of appel-

lant addressed to the argument complained of. We shall not attempt to discuss in detail all the remarks complained of by appellant, for the reason that those not mentioned in the opinion were either permissible upon the record, or were beyond peradventure of such a nature that all prejudice resulting therefrom could have been removed by an admonition of the trial court.

Appellant's propositions, in effect, present two main contentions:

1. That the attacks made upon the credibility of appellant's witnesses, particularly Bill Pappas, were not justified by the evidence and were highly inflammatory and prejudicial.

2. That the argument of counsel constituted an appeal to racial prejudice.

■ In the trial below, appellee took the position that although the bus had struck an open door of the automobile involved, the deceased, Paul Carson, had not been hit by appellee's bus. An issue involving this theory advanced by appellee was submitted to the jury and answered in the negative, contrary to appellee's contention. However, the trial court's holding, evidenced by the submission of the issue, was that the evidence was sufficient to support an affirmative as well as a negative finding thereon, and we agree with that holding. A fact issue was involved, and certainly counsel was entitled to argue his theory to the jury. It further appeared, according to appellee's witnesses, that the behavior of Pappas immediately after the collision was somewhat unusual to say the least. Appellant suggests that Pappas was suffering from a brain concussion, a permissible theory under appellant's evidence. Counsel for appellee, in arguing his theory of the case that deceased had not been injured by appellee's bus, commented upon the conduct of Pappas immediately after the collision, and, in order to explain the injuries sustained by the deceased, suggested that some act of Pappas may have been responsible therefor. This was not reversible error. In presenting a legitimate theory of a case, "the fact that remarks of counsel are harsh [will] not authorize or justify a reversal of the case. The court may not restrict counsel in argument to any certain view of the facts, or the deductions to be drawn therefrom." Jackson v. Jackson, Tex.Civ.App., 35 S.W.2d 830, 835. And, further, counsel "ought not to be trammeled in his comments upon the evi-

dence and facts appearing in the case, or upon the character and conduct of the witnesses produced against his client." Corn v. Crosby County Cattle Co., Tex.Com. App., 25 S.W.2d 290, 293.

■ We next consider the second contention; namely, that the argument was calculated to arouse racial prejudice. It is, of course, well settled that an argument appealing to race, religious, or sectional prejudice is highly improper and the Texas appellate courts have not hesitated to reverse cases in which such arguments were employed. Moss v. Sanger, 75 Tex. 321, 12 S.W. 619; San Antonio Traction Co. v. Lambkin, Tex.Civ.App., 99 S.W. 574; Trachtenberg v. Castillo, Tex.Civ.App., 257 S.W. 657; Hewitt v. Buchanan, Tex.Civ. App., 4 S.W.2d 169; Morgan v. Maunders, 37 S.W.2d 791; Basanez v. Union Bus Lines, supra.

■ It appears from the record that the deceased was born in Greece; that the appellant administrator was also born in Greece, though both were naturalized American citizens, residing in Bexar County; that the father of the deceased, Christ Karanzulis, was living in Greece; further, that Bill Pappas, appellant's principal witness, was born in Greece and was not an American citizen. Several witnesses were placed upon the stand by appellant to testify to his deceased brother's reputation, and these witnesses were of Greek racial or national origin. It further appeared that there were a number of Greeks living in Bexar County; that the majority of them, including the deceased, the appellant and the witnesses here involved, were members of the Greek Orthodox Church and members of a Greek fraternal organization.

Counsel for appellee consumed approximately an hour and thirty minutes in making his argument to the jury. (The argument is set out in thirty-one closely typewritten pages in the transcript.)

After having spoken for approximately twenty-four minutes, counsel stated that there was "something fishy about this Greek lawsuit; there is just something wrong with it."

About twenty-four minutes later, counsel, in commenting upon the credibility of appellee's witnesses, commented upon the fact that such witnesses and the deceased were apparently all members of the Greek Orthodox Church, and "all members of the (Greek) fraternity in San Antonio."

About thirty-nine minutes after the above-mentioned occurrence, and toward the end of the argument, counsel argued that appellee's witnesses had told "the absolute truth"; that the evidence of appellant's witnesses was a "cock and bull story"; a "fabrication to try and milk some money from a fellow citizen here in Bexar County." Counsel further inquired, "where are these United States of America coming to, Gentlemen of the Jury, if men are permitted to come into the court room with that type of evidence here and attempt to recover damages in a lawsuit?"

█ We have concluded that the record does not support appellant's contention that this case must be reversed upon the ground that the argument of counsel was an appeal to racial prejudice. It may be conceded that certain practical difficulties are presented in jury trials of cases involving the foreign born, on one hand, and the native born, on the other, so much so that in certain cases juries de medietate linguae were allowed by the early English statutes. Under our system it is neither permissible nor practicable to make use of such juries, and the burden of preventing a prejudice from influencing a verdict necessarily rests primarily with the jury, and it is presumed that a jury will heed the admonitions of the trial judge in this regard. Davis v. Hill, Tex.Com.App., 298 S.W. 526. We wish here to point out that the prejudice, if any, resulting in injury to appellant arising out of the fact that he and the beneficiary for whom he sued were of Greek nativity, was not injected into the case by counsel's argument, but existed by reason of the source of the evidence upon which appellant necessarily had to rely in order to establish his pleaded cause of action. Fidelity Union Casualty Company v. Koonce, Tex.Civ.App., 51 S.W.2d 777. If the remark concerning the "Greek lawsuit" be considered improper, the prejudice resulting from the remark, alone, could have clearly been removed by an admonition of the trial court.

█ As it is permissible for counsel to comment upon the possible bias of witnesses, we do not believe a case for reversal is presented by counsel's comment upon the facts brought out in evidence, and properly in the record, that appellant, the deceased and the witnesses for appellant belonged to the same religious and fraternal groups.

The reference to taking money from a "fellow citizen in Bexar County," construed in its proper context, does not seem to attempt a distinction between persons of foreign birth and citizens of Bexar County. It rather appears that counsel was denouncing appellant and his witnesses for attempting to take money from their fellow citizen of Bexar County, the appellee.

We realize, of course, that the impression of an argument received at the time of its delivery in the forum of the trial court may differ from that received by reading the cold record, and, for that reason, we must necessarily attach importance to the trial judge's action in overruling the motion for new trial. On the whole, upon the record presented here, we can not say that the somewhat extravagant and rather disconnected statements of counsel in his argument constituted an appeal to racial prejudice.

█ We are further of the opinion that any prejudicial effect resulting from any part of counsel's argument could have been clearly removed by an admonition or instruction of the trial court. It is therefore our duty to affirm the judgment appealed from. Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054. It is accordingly so ordered.

Affirmed.