## H. H. HOUSEMAN v. PAUL DECUIR

No. A-4962. Decided November 2, 1955.
Rehearing overruled December 7, 1955.
(283 S.W. 2d Series 732)

128

O. *Woodrow Wilson,* of Vidor, *Hustmyre, Bruce & McKee* and *F. W. Hustmyre,* all of Orange, for petitioner.

The Court of Civil Appeals, after holding that the closing argument of counsel for plaintiff was improper, and holding that it was difficult to determine whether the evidence was sufficient to support the verdict in plaintiff's favor, erred in holding that said argument was not of such importance as to make it a cause of verdict. Altman v. Dallas Ry. & Term. Co., 152 Texas 509, 260 S.W. 2d 596; Texas Power & Light Co., v. Hering, 148 Texas 350, 224 S.W. 2d 191.

*Sexton & Neff* and *W. P. Sexton,* of Orange and *A. M. Huffman,* of Beaumont, for respondent.

Cited Patterson v. Fuller, 110 S.W. 2d 1230; McKinney v. Watts, 99 S.W. 2d 673; West v. Houston Oil Co. of Texas, 120 S.W. 228.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

Our petitioner, H. H. Houseman, defendant in the trial court, suffered an adverse judgment there, in a trespass to try title action, which has been affirmed by the Court of Civil Appeals, 281 S.W. 2d 103. His petition here presents the single question of improper jury argument of counsel for our respondent Decuir (plaintiff below) on the issue of the latter's title under the ten-year statute of limitations, which was the only title he asserted. (Article 5510 Vernon's Civ. Stat.).

The petitioner-defendant proved up good record title to the

approximately 80 acres of land in suit, which was located within the city limits of Vidor in Orange County, having acquired it in 1950 by devise from one Stanford ("Pug") Ward, a resident of the same area, who had in turn inherited it in 1937 from his wife, Nora Lee Ward, who had bought it in 1926 from the then record owner. The respondent-plaintiff, prior to the period of his alleged adverse possession (1932-45) had acquired by deed and lived upon a ten-acre tract adjoining the larger tract in dispute, but as to the latter, he in effect admitted to have consciously trespassed upon it, or in his own words, "homesteaded" it, for the purpose of acquiring limitation title to it.

While he undoubtedly adduced evidence of having told sundry witnesses that the land was his and done other acts indicative of a claim of ownership, he never sought to render the property for taxation or paid taxes on it, although paying taxes during the same period on all nearby property which he held by deed. Moreover, he did not bring this suit until 1952, or several years after the death of the Wards, who were his neighbors and acquaintances, and several years after he had moved away from the community and ceased to exercise any acts of dominion over the land.

His case on use and possession was based on his own testimony, corroborated in greater or less degree by several witnesses from the immediate area called by him, to the effect that he had employed the land, which was, in substantial part, woodland, for pasturage of cattle and horses, had built fences in those parts of the boundaries where fence gaps existed and had kept all fences in repair, leaving the line between the disputed tract and his adjoining tract unfenced so as to have a common enclosure. The important parts of this proof were sharply contradicted by witnesses for the petitioner-defendant, Houseman, one of whom also testified to a conversation between the respondent-plaintiff and the Wards, whereby the latter gave, and the former accepted, permission to use the land and fix up the fences for this purpose.

In the course of the testimony for the petitioner-defendant, the witness, J. M. Ball, testified on cross examination in response to a question of whether he knew the petitioner-defendant's devisor, Stanford Ward, "No, he was never sober enough." This and a small item of testimony to the effect that Ward had no regular means of employment is about all there was in the record concerning Ward, except the below-mentioned documentary evidence.

In the chain of title introduced by the petitioner-defendant were included the Ward will containing the words, "I give, bequeath and devise to Mr. H. H. Houseman," and also a final judgment in favor of the petitioner-defendant rendered in the latter part of 1950 in a contest of the will brought by one Voltaire Ward on the grounds of testamentary incapacity and undue influence on the testator by the petitioner-defendant. The judgment reflected a jury verdict in favor of the petitioner-defendant on the matter of testamentary capacity, and an evident disagreement on the issue of undue influence, as well as the holding to the effect that no competent evidence of undue influence had been presented. The validity of the judgment or of the will was not in question nor did the judgment give any details of the proof introduced in the will contest.

As disclosed by the bill of exception, which is the basis of the petitioner-defendant's position in the instant case, his counsel in argument apparently referred to "silent witnesses that couldn't be here to testify" on behalf of the petitioner-defendant, after which the following argument for the respondent-plaintiff and related proceedings occurred:

" 'Gentlemen, Judge Hustmyre said something about the silent witnesses that couldn't be here to testify in their behalf. He was talking about Mr. and Mrs. Ward. No, they couldn't be here and testify in their behalf and neither could they be here and testify in our behalf.

" 'It has been admitted in this record that H. H. Houseman got this property under a will. He never paid five cents for it. It is in this record, and yet when Mr. Ball came out there to talk to Stanford Ward, he said he was so drunk he couldn't do business with him, yet Mr. Ward makes a will to this Mr. Houseman, willing him the land. It didn't cost him one five cents.'

"WHEREUPON, Frank W. Hustmyre, Attorney for Defendant, H. H. Houseman, made the following objection to the Court:

" 'I object to that kind of speech. The will speaks for itself and it is not in the record as to whether or not anything was paid for the will.'

"WHEREUPON, the Court gave the following instruction:

" 'Gentlemen, (addressing the jury) you will disregard the

remarks of Mr. Sexton about the land not costing Mr. Houseman one five cents. You will disregard any statement made by counsel with reference to that."

"Whereupon, the said W. P. Sexton immediately made the following statement to the jury.

" 'The will is simply this - - - it is in the record. It says that I, Stanford Ward, do hereby devise, bequeath and give to H. H. Houseman all of my property. That is the exact language in the will and it is introduced in this record and I challenge anyone to say it is not in this record.' "

The statements that the petitioner-defendant got his title without cost by devise from an inebriate were, in our opinion, wholly improper, as evidently both courts below agree that they were. The subject matter of each statement was, indeed, "in the record" to the extent we have indicated above. But it had no legitimate bearing on the one and only title issue before the jury, to wit, whether the respondent-plaintiff had fulfilled the requirements of the limitation statute. It was thus essentially the same as if outside the record so far as concerns the propriety of argument on the limitation issue. Certainly there was not in the record any evidence that the petitioner-defendant took advantage of an alcoholic or drunken person to acquire property from him by will, which the argument obviously implied that he did. The record of the judgment in the will contest in favor of the petitioner-defendant made no reference to even an unsuccessful contention to this effect against him. The implication of the argument was obvious, because the reference to Ward's weakness could have been intended for no other purpose. It was part and parcel of the statement as to how the petitioner-defendant acquired the land from Ward, and thus plainly not a reference to whether Ward would have been sober enough to testify, if he had been a real instead of "silent witness." To argue that the petitioner-defendant got the land without it costing him "one five cents" was improper, but to add in the same sentence that he thus got it from a drunkard multiplied the impropriety.

The argument thus combines both the evils of introducing purported evidence not in the record and appeals to passion and prejudice. See Texas Employers' Ins. Ass'n v. Haywood, 153 Texas 242, 266 S.W. 2d 856, and cases there cited. On the inflammatory side, we see no great difference between the argument inferentially accusing the petitioner-defendant of taking

advantage of the bounty of an alcoholic and argument of the type condemned in Southwestern Greyhound Lines v. Dickson, 149 Texas 599, 236 S.W. 2d 115.

True, the objection made to the argument was in part general and, in the specific part, did not expressly point out the inference last mentioned. However, the latter was so enmeshed with the idea of the petitioner-defendant having got the property for nothing from Ward that pointing out the one idea was in effect to point out both. This Court has not taken the position that objections to arguments shall be as exact as objection to evidence. Since the inference in question was plainly made with deliberation, it was not an oversight of which arguing counsel had a right to be reminded—with the incidental result of further emphasizing it to the jury even when purporting to retract it.

The serious question is as to the effect of the court's instruction to disregard the argument. In the Dickson case, supra, we held some of the improper argument there in question "not to have been cured" by an instruction, 149 Texas 599, 236 S.W. 2d 115, 120. In Texas Employers' Ins. Ass'n v. Haywood, supra, in reversing for argument invoking race prejudice against particular witnesses (whose race was, of course, already known to the jury, which had seen and heard them) we held that the "harmfulness" of the argument "could not have been eliminated by either retraction or instruction or both," and that thus the failure of the aggrieved party to object or raise the point until filing his amended motion for new trial was not material. One might argue with some force that if a juror would conclude to disbelieve a witness simply because of what counsel said about his obvious race, so would he conclude to favor a limitation claimant as against the record title owner because of counsel's clear inference that the latter was morally not entitled to keep his land, having acquired title to it by unmoral means and at no expense. In this connection, because of the necessarily simple character of the jury submission, the jury could easily have known how to favor a particular side by its verdict.

■ But be this as it may, we think that on the bill of exception as a whole, the case is substantially the same as if no instruction to the jury had been given, or even as if the objection had been overruled. Immediately following the instruction, counsel for the respondent-plaintiff in effect repeated his argument by vigorously insisting to the jury that what he had said was in fact in the record. The judge took no action, despite the ob-

jection having been made and sustained only seconds before on the same point. Under the circumstances, counsel for the petitioner-defendant could hardly be expected to urge the judge to repeat or enforce his own ruling and did not do so. A probable inference for the jury thus was that the court thought his own instruction of doubtful merit and the argument of some bearing on the limitation issue.

We think the record also reflects that the argument "was reasonably calculated to cause and probably did cause the rendition of an improper judgment." Rules 434 and 503, Texas Rules Civ. Proc. On the whole record, the case being a strongly contested and strictly factual dispute, depending in much part upon the testimony of the respondent-plaintiff himself, we think the jury probably was influenced by the improper argument, which by its very nature was "reasonably calculated" to produce such influence. The refusal of the Court of Civil Appeals to reverse on the point that the verdict was against the overwhelming weight and preponderance of the evidence means, not that the petitioner-defendant failed to have the better case on the evidence, which we think the record reflects that he did have, but only that the weight and preponderance, if any, in his favor was not of the unusually high degree required for overturning a verdict based on conflicting evidence. In fact the court said that the question of whether the verdict was not *"clearly wrong"* or *"a manifest injustice"* was "not an easy one to solve," or in other words, that the verdict probably was against the weight and preponderance of the evidence, although not strongly enough against it to meet the requirements for a reversal on that score. The power of this Court to consider the preponderance of the evidence in connection with the question of probable prejudice from improper argument is recognized in Lumbermen's Lloyds v. Loper, 153 Texas 404, 269 S.W. 2d 367, 370, 371, and is there distinguished from our power, or lack of it, as to overturning fact findings as being against the great weight and preponderance of the evidence.

The judgment of both courts below is reversed and the cause is remanded for a new trial.

Opinion delivered November 2, 1955.

MR. JUSTICE GRIFFIN, joined by JUSTICES BREWSTER, CALVERT and WALKER, dissenting.

I cannot agree that the argument complained of was either

"inflamatory" or constituted "imaginary testimony" outside the record, as is held by the majority opinion. In the case of Wade v. Texas Employers' Ins. Ass'n., 1951, 150 Texas 557, 244 S.W. 2d 197, this Court laid down the rule that for argument to be "incurable" by a proper instruction from the trial court, it must be such an argument of the "imaginary testimony" type. The "curable" arguments were said to be those which are "inflammatory." In the case of Texas Employers' Ins. Ass'n. v. Haywood, Tex. Civ. App., 266 S.W. 2d 856, 858, it was recognized that an appeal to the jury based upon racial prejudice was of the incurable type, and, therefore, an objection to the argument and a request to the court for an instruction to the jury to disregard such argument was unnecessary. In that case we said: "* * * The true test is the degree of prejudice flowing from the argument—whether the argument, considered in its proper setting, was reasonably calculated to cause such prejudice to the opposing litigant that a withdrawal by counsel or an instruction by the court, or both, could not eliminate the probability that it resulted in an improper verdict. * * * "

A litigant is entitled to have his counsel argue the facts of the cause to the jury. The right of counsel to draw inferences and deductions from the facts introduced in evidence is a most valuable one, and one which is a help to the jurors in answering the issues submitted to them. In Ramirez v. Acker, 134 Texas 647, 138 S.W. 2d 1054, 1055, this Court said:

"* * * Great latitude is allowed counsel in discussing the facts and issues. Counsel are permitted to show the environments of the case; they may comment upon the bias or interests of the parties and witnesses, and may discuss the reasonableness or unreasonableness of the evidence and its probative effect or lack of probative effect; but such latitude extends only to the facts and issues raised by the evidence in the case. * * *"

In discussing the rules governing argument of counsel and the necessity for objection, the Court in the Ramirez case said:

"The second rule is: If the argument is of such a nature or is made under such circumstances that if objection is made at the time, so that counsel can offer an explanation or make such corrections as will make such argument proper or harmless, or if the argument is of such a nature that its withdrawal by counsel or instruction by the court to the jury to disregard same will cure the error and render the effect of the argument harmless, the complaining party must object to such argument and request the court to instruct the jury not to consider same; and

failure so to do waives the error. Robbins v. Wynne, supra, (Tex. Com. App., 44 S.W. 2d 946) ; City of Waco v. Rook, Tex. Civ. App. 55 S.W. 2d 649; Gulf, C. & S. F. R. Co. v. Greenlee, 70 Texas 553, 8 S.W. 129; 41 Tex. Jur., p. 833, Sec. 88."

Also 41-B Tex. Jur. 276, Sec. 235:

"In argument, an attorney may draw from the facts and circumstances in evidence any inferences and deductions that are reasonable and fair. In this respect he has much latitude, that is, the court may not restrict him to any certain view of the facts or the deductions to be drawn therefrom. There is a wide liberty of speculative deduction in presenting cases to the jury. It means that counsel is permitted to state to the jury such facts as he, in good faith, draws from the circumstances of the case, and what would be very likely to follow if such inferences should turn out to be correct. * * *"

Another cardinal rule is that if the argument is curable there must be an objection made thereto at the time the argument is made and a request to instruct the jury to disregard the argument. Ramirez v. Acker, supra; Texas & New Orleans Railroad Co. v. Sturgeon, 142 Texas 222, 177 S.W. 2d 264; 41-B Tex. Jur. 348, Sec. 289.

With the above rules in mind let us examine the argument complained of. First, I would point out that no objection was made in the trial court that the argument was an argument that petitioner, Houseman, got Ward drunk and thereby induced Ward to make a will in favor of Houseman. Nor is that contention made in the motion for new trial filed in the trial court. That is a deduction from the argument made by Houseman in his briefs in the Court of Civil Appeals and by it rejected when it overruled Houseman's complaint of the argument. Houseman again drew such deduction in his application for writ of error and oral argument upon the submission of the cause in this Court. The majority opinion adopts such theory in its interpretation of the argument. What was said in the trial court by Houseman's counsel in objecting to the argument at the time it was made was: "I object to that kind of speech. The will speaks for itself and *it is not in the record as to whether or not anything was paid for the will.*" (Emphasis added). The trial court, by his instruction, sustained the objection and instructed the jury to disregard the remark of opposing counsel about the land not costing Mr. Houseman one five cents, and further that the jury "will disregard" any statement made by counsel with

reference to that. Opposing counsel then stated the will was in the record (and it was) and quoted the part of the will wherein Ward said, "I, Sanford Ward, do hereby devise, bequeath and give to H. H. Houseman all of my property."

It is apparent from the above record in this cause that the sole and only complaint made in the trial court at the time was a complaint that opposing counsel was charging Houseman with getting the property involved without paying one five cents for it. It is further apparent that was all the implication drawn from the argument by the trial court at the time—as is shown by the court's instructions. That was all that was in opposing counsel's mind at this time as is shown by his remarks after the court's instruction. It occurs to me that the conclusion drawn by the judge who was presiding over the trial, by Houseman's counsel, both of whom were present and knew the circumstances under which the argument was made, and by the counsel who was making the argument would be more nearly the correct conclusion as to what was then meant by the argument than conclusions drawn by an appellate court upon a study of the cold record. That the trial judge drew the same conclusion as to the meaning of the argument is also shown by the fact that he overruled the motion for new trial which contained an assignment based upon the argument.

I feel that Houseman cannot now complain of the argument on the ground here urged and discussed next above by virtue of the well-established rule that the statement of one objection to argument which could be cured by instruction of the court or withdrawal by counsel amounts to a waiver of all others. Ft. Worth & D. C. Ry Co. v. J. C. Wooldridge & Son, Tex. Civ. App., 105 S.W. 845, aff. 101 Texas 471, 108 S.W. 1159; Ft. Worth & R. G. Ry Co. v. Bryant, 1919, Tex. Civ. App., 210 S.W. 556, wr. ref.; Holt v. Collins, 1939, Tex. Civ. App., 131 S.W. 2d 813, dism. cor. judg.; Houston Fire & Casualty Ins. Co. v. Ford, 1951, Tex. Civ. App., 241 S.W. 2d 158, ref. n.r.e.; 41-B Tex. Jur. 355, Sec. 291. This disposes of the complaint against the argument on the ground that it was inflammatory and prejudicial because it accused Houseman of securing a will to this property from Ward while Ward was drunk. Since no one connected with this cause at the actual trial thereof or on the hearing of the motion for new trial, including counsel for Houseman and counsel for Decuir and the trial judge, put the construction upon the argument that is now placed thereon by the majority opinion, it seems to me there could be no logical or consistent contention other than that an objection should have been made at the time of the ar-

gument pointing out the specific deduction now made. Had this been done an opportunity would have been given counsel making the argument objected to to withdraw, explain or correct any such deduction as is now made. In addition, opportunity would have been given the trial judge to reprimand counsel making the argument; instruct the jury not to consider same, or otherwise correct any assumed error therein. Particularly should this be the rule when, as in the case at bar, no request of any kind or character was made at the time that the jury be given instruction concerning the effect of the argument. Trial judges are entitled to be given an opportunity to take care of the record in a cause so as to prevent useless reversals and delays in the expeditious disposition of causes tried by them. In view of the above, I do not feel that the jury who were laymen would draw a different implication from the argument than that drawn at the time by both counsel and the trial judge. To be error in argument in the setting and under the circumstances incident to its making, we must say not only is the implication which we draw a fair one to be drawn by the jury, but, in addition, we must say that the jury probably did draw such implication. I cannot agree that the jury probably did draw such implication.

Now let us consider the argument that the land did not cost Ward five cents. The will was in evidence and it showed on it face that Ward gave the land to Houseman. Decuir's counsel had a right to state such fact. It is claimed this statement prejudiced Houseman because it was an appeal to the jury to take the land away from Houseman because it cost Houseman nothing. We must look at the whole record in this case to determine if there was error which was "reasonably calculated to cause, and probably did cause the rendition of an improper judgment" in this cause. Texas Rules of Civil Procedure 434 and 503; Texas Employers' Ins. Ass'n. v. Haywood, supra. The trial court and the Court of Civil Appeals have each held no error of such character is shown.

We must remember that this was an action whereby Decuir sought to recover the title to the land by virtue of the ten year statute of limitation. That statute requires no payment nor any expenditure of funds in order to recover title to land. All of us who have tried these limitation cases, whether before the court or a jury, know that it is well established that a limitation claimant is usually seeking to recover the land "without it costing him one nickel." Such being the position of the plaintiff and his not making any claim that he was paying "one five cents" for the land, I cannot conceive that the jury would be influenced

by a statement that the land had not cost Houseman "one five cents." Rather, it seems to me, such statement, coupled with the trial court's instruction to disregard any such argument, could not possibly be prejudicial. Argument complained of must be measured and weighed by the nature and environments of the particular case in which it is made.

Some discussion is had in the majority opinion as to which of the parties had produced the overwhelming weight and preponderance of the evidence. The Court of Civil Appeals has final and exclusive jurisdiction thereof. This is too well established to require citation of authority. The Court of Civil Appeals, in the exercise of its jurisdiction, has said the evidence is sufficient. There is no assignment of "no evidence" to support the verdict. With the Court of Civil Appeals sustaining the verdict, there is no weakness in plaintiff's evidence to support the verdict. Plaintiff had many witnesses who gave evidence in support of his contentions. Defendant had many witnesses who gave contrary evidence. The trial jury heard all of these witnesses testify and observed their action and demeanor on the stand. It was not only within the jury's province, but it was also the jury's duty to decide this conflict. This they did by deciding in favor of plaintiff and the testimony given by his witnesses. That testimony has been held by all courts having the right and power to determine that question to be sufficient to support the verdict. We are bound by such holdings even though we may consider all of the evidence introduced in determining if the argument probably was error, but not for the purpose of deciding the preponderance thereof.

Considering all the facts and circumstances of this case the nature of the case and the manner and method of the trial, I am unable to see any error in the argument which would entitle petitioner to a reversal. I would, therefore, affirm the judgments of both courts below.

Opinion delivered November 2, 1955.

Rehearing overruled December 7, 1955.