YOUNGER BROTHERS INCORPORATED V. MARY E. MYERS ET AL.

No. A-7090. Decided May 6, 1959.
Rehearing overruled June 17, 1959.
(324 S.W. 2d Series 546)

*Keith, Mehaffy, McNichols & Weber, Dewey J. Gonsoulin* and *James W. Mehaffy*, all of Beaumont, for petitioners.

The Court of Civil Appeals erroneously held that the jury argument of petitioner's counsel was improper and not based on the evidence; was so prejudicial that a new trial should be granted and, by implication, that it could consider the testimony of jurors in deciding whether argument was improper and prejudicial and caused the rendition of an improper judgment. Fisher v. Leach, 221 S.W. 2d 384; Guajardo v. State, 139 Texas Crim. Rep. 201, 139 S.W. 2d 85; Goforth v. Avey, 153 Texas 449, 271 S.W. 2d 277.

*Baker & Vaughn, Geo. A. Weller* and *David C. Marcus,* all of Beaumont, for respondents.

MR. JUSTICE NORVELL delivered the opinion of the Court.

A take nothing judgment in favor of defendants Younger Brothers, Inc. and William Jacob Mullis was reversed by the Court of Civil Appeals because of improper argument by defendants' counsel. Myers v. Younger Brothers, Inc., 316 S.W. 2d 929, l.c. 939-42. Being of the tentative opinion that a reversible error could not be predicated upon such argument in the absence of a timely objection thereto, we granted writ of error. Further consideration of the case has convinced us of the correctness of our tentative opinion. We have also reviewed the points asserted by Mary E. Myers et al in their brief filed in the Court of Civil Appeals and finding none which would vitiate the judgment of the trial court, the order of the Court of Civil Appeals reversing such judgment is accordingly reversed and the judgment of the trial court is affirmed.

This lawsuit grew out of an automobile-truck collision which occurred on U.S. Highway No. 87 between Orange and Port Arthur, Texas on August 16, 1956. Shortly before the collision, the Younger Brothers tank truck was travelling in a southerly direction along a local way known as the Pure-Atlantic Road. Upon approaching the intersection of the Pure-Atlantic Road with Highway No. 87 Mullis, the driver of the truck, attempted to negotiate a left-hand turn into Highway No. 87 with the intention of travelling thereon in an easterly direction. At this juncture, however, his truck stalled, completely blocking said

Highway No. 87. A North American Van Lines truck shortly thereafter pulled onto the south shoulder of the highway along the right-side of the cab of the Younger Brothers truck. The North American vehicle was equipped with flashing directional lights which were set in operation and were operating at the time of the collision which took place about five minutes after the truck had stalled. The time was around 7:15 or 7:20 in the evening and there was some dispute as to the degree of the darkness of the night. Mullis put out no flares or warning signals to apprise those in approaching automobiles of the position of his truck, but during the five minute interval mentioned he was occupied in either trying to stop traffic coming from Port Arthur or in unsuccessfully attempting to hook a chain onto the stalled truck so that it could be towed off the highway by the North American truck. Just before the collision occurred Mullis waved his arms and threw his hat in the air in an effort to stop the Myers car.

The automobile driven by H. J. Myers was travelling along the highway in a westerly direction toward Port Arthur at approximately forty miles per hour when it ran into the Younger tank truck. Myers was killed and his wife and children seriously injured.

The jury found that Mullis, the Younger Brothers driver, was not negligent in failing to put out warning signals or flares, nor in deviating from the paved portion of the Pure-Atlantic road in making his entry into Highway No. 87; that he was faced with an emergency caused by the sudden stopping of his truck, and was not negligent in connection therewith.

As to Myers, the jury found that he was guilty of contributory negligence in that he failed to keep a proper lookout. Also in connection with the flashing lights of the North American truck, the jury found that Myers saw these light and was thereafter contributorily negligent in failing to slacked the speed of his vehicle; in failing to stop the automobile, and in failing to turn his car to his right, that is, to the north side of the Younger truck.

It appears that the State Highway Patrol, the Jefferson County Sheriff's office and the District Attorney either conducted or participated in an investigation of the collision shortly after it occurred. While there was objection and considerable argument over questions propounded to Mullis, inquiring if the State Highway Patrol and the State of Texas had absolved him

of all responsibility in connection with the collision, the following testimony by Mullis was received without objection:

"Q. I will ask you this: Did the District Attorney make a fair investigation of this accident and interrogate you and interrogate other witnesses? A. As far as I know, yes, sir.

"Q. And did the State Highway Patrol make an investigation? A. Yes sir.

"Q. Was the Sheriff's Department, was * * * A. Yes, sir.

"Q. Was there a representative of that? A. Yes, sir.

"Q. Did any of these agencies, the District Attorney's office, the Sheriff's office, or the State Highway Patrol, did any of them file any kind of charges whatever against you? A. No, sir."

■ Purportedly, based upon this evidentiary record of investigation, counsel for Younger Brothers made the following argument:

"* * * The evidence shows that the Texas Highway Department, State Highway Patrol participated in that investigation. It shows that the Jefferson County Sheriff's Dept. participated in the investigation and it shows that the District Attorney's office participated in that investigation, and what did they do when they got through checking, making a thorough investigation? They were concerned with essentially the same thing that we are concerned with now, that is fault. What did they do? They completely and absolutely exonerated Bill Mullis, and turned him loose, filed no charges whatever, and what [opposing attorney] says will make him so happy is for these twelve men eight months later on the basis of testimony that is no stronger than was there, to say, 'No' that the Highway Department was wrong, the Sheriff's Department was wrong, the DA's office was wrong, we are going to impose and superimpose our judgment, we are going to say to those officers who were sworn to perform their duty that exonerated this man they were wrong, on the basis of that testimony."

This argument was objectionable primarily because of the unauthorized inferences stated therein. The mere failure to file a criminal complaint is not an exoneration of a charge of civil fault and its consequent liability. "Presumptively, at least, traffic tickets are only given for violation of penal ordinances or

statutes and not for the purpose of establishing fault in civil litigation." Condra Funeral Home v. Rollin, 158 Texas 478, 314 S.W. 2d 277. The question of whether Mullis was guilty of negligence in the particulars charged in the petition was a matter for the decision of the jury impanelled to try this case and not for the State Highway Patrol, the Sheriff's office or other law enforcement agencies.

■ However, in deciding if the argument constitutes a reversible error, we must deal with a hypothetical situation. As pointed out by the Court of Civil Appeals, — although objection was made to the stating of unauthorized inferences and conclusions during the taking of evidence, no objection was made to the argument above set forth which consisted of references to matters admitted in evidence without objection as well as unwarranted inferences sought to be drawn therefrom. This then presents the proposition that even if an objection had been made and an appropriate instruction to disregard been given, the prejudice flowing from such argument would nevertheless have been so strong that it could reasonably be said that an improper judgment would have probably resulted therefrom. Rules 434 and 503, Texas Rules of Civil Procedure; Aultman v. Dallas Ry. & Terminal Co., 152 Texas 509, 260 S.W. 2d 596; Wade v. Texas Employers' Ins. Ass'n., 150 Texas 557, 244 S.W. 2d 197.

A factual situation similar to that disclosed by the present record was before this Court in Goforth v. Alvey, 153 Texas 449, 271 S.W. 2d 404. During cross-examination Goforth volunteered the statement that he had not received a traffic violation ticket. No objection was made to the statement nor motion made to strike it. Alvey v. Goforth, Texas Civ. App., 263 S.W. 2d 313, 319. However, this circumstance was commented upon by counsel in argument and when the case reached this Court the majority took the view that the objectionable argument "consisted of deductions drawn by the attorney from facts in evidence," which, although fallacious, probably did not cause the rendition of an improper judgment.[1] In line with the holding of the majority in the Goforth case, we think the argument here, when considered in the light of the entire record, does not present a

---

1.—In Alvey v. Goforth one of the dissenting justices, Mr. Justice Wilson, took the position that the argument was one which gave additional factual information to the jury and hence an objection was not necessary in order to present a reversible error. See, discussion in Wade · v. Texas Employers' Ins. Ass'n., 150 Texas 557, 244 S.W. 2d 197 relating to "curable" and "incurable" arguments. However, in Texas Employers' Ins. Ass'n v. Haywood, 153 Texas 242, 266 S.W. 2d 856 it was held that the particular classification of the argument, i.e., whether it was merely inflamatory or placed new evidence before the jury, was not necessarily controlling upon the question of reversible error.

case of reversible error in the absence of an objection to the argumnt or a request that the jury be instructed to disregard the same. Particularly is this true in view of the important circumstance that the objectionable argument has reference to an investigation of the behavior of Mullis and does not bear directly upon the conduct of H. J. Myers, whom the jury found to be guilty of several omissions constituting contributory negligence, as heretofore pointed out. The jury's findings upon these contrbutory negligence issues determined the matter of liability adversely to the position of Mary E. Myers et al. And, this is true regardless of how the findings as to Mullis' alleged negligence might have been determiend. Consequently, we cannot say that the argument "probably did cause the rendition of an improper judgment in the case." Lumbermen's Lloyds v. Loper, 153 Texas 404, 269 S.W. 2d 367; Cloud v. Zellers, 158 Texas 253, 309 S.W. 2d 806; Condra Funeral Home v. Rollin, 158 Texas 478, 314 S.W. 2d 277.

During the heat of trial extravagant and ill-considered statements are often made. The prejudice resulting from such remarks can generally be removed by an admonition to the jury from the presiding judge and we are unwilling to accede to the proposition that juries pay little or no attention to the instructions of trial judges. We do not regard the improper argument made in this case as being beyond correction by means of a proper instruction. Ramirez v. Acker, 134 Texas 647, 138 S.W. 2d 1054; Rogers v. Broughton, Texas Civ. App., 277 S.W. 2d 121, wr. ref. n.r.e.[2]

■ The brief filed by Mary E. Myers et al in the Court of Civil Appeals contains a vigorous and well-prepared argument in support of the proposition that the trial court erroneously held that the jury did not enter into an agreement to be bound by a majority vote and did not agree to answer the special issues submitted to them so that the defendant would win. See, Maryland Casualty Co. v. Hearks, 144 Texas 317, 190 S.W. 2d 62; Trousdale v. Texas & New Orleans Railroad Co., 154 Texas 231, 276 S.W. 2d 242. Four witnesses who sat as jurors in the case testified upon the hearing of the motion for new trial. The testimony of three of them in the main supported the theory that improper agreement had been made. The fourth witness, Glanville, however, contradicted the testimony of the others in numerous particulars. We have examined the testimony adduced upon the hearing of the motion for new trial in its entirety and in view

2.—For a discussion of "Improper Argument to Juries in Civil Cases," see Note, 43 Minnesota Law Review 545.

of the testimony of the witness Glanville we cannot say that there was *no* evidence supporting the trial court's express findings that, "The jury did not enter into an agreement to bind themselves to a 'majority rule' in deciding the special issues submitted to them in the Court's charge," and that "The jury did not enter into any agreement to answer the issues so as to favor one party or the other."

■ The trial court found as a matter of fact that the alleged overt acts of misconduct did not occur. If there be *any* evidence to support such findings, they are binding upon this Court. Barrington v. Duncan, 140 Texas 510, 169 S.W. 2d 462. With reference to the legal concepts of "no evidence" and "any evidence" see Joske v. Irvine, 91 Texas 574, 44 S.W. 1059. That portion of the Court of Civil Appeals' opinion relating to the issue of alleged jury misconduct is set forth in 316 S.W. 2d 932-939.

Discussion of other issues decided by the Court of Civil Appeals would serve no useful purpose.

For the reasons pointed out the judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.

Opinion delivered May 6, 1959.

Rehearing overruled June 17, 1959.