The STATE of Texas, Appellant,

v.

E. W. JAUERNIG et al., Appellees.

No. 14363.

Court of Civil Appeals of Texas.

San Antonio.

Oct. 27, 1965.

Rehearing Denied Nov. 24, 1965.

Waggoner Carr, Atty. Gen., Hawthorne Phillips, Stanton Stone, T. B. Wright, Claude Hodge, Winston P. Crowder, Asst. Attys. Gen., Austin, for appellant.

Gray & Gardner, Patrick J. Pape, San Antonio, for appellees.

BARROW, Justice.

This is a condemnation case brought by the State acting by and through the State Highway Commission to condemn the fee simple title to 1.371 acres of land out of 4.731 acres of vacant land lying between Houston Street and Commerce Street, near the east limits of the City of San Antonio. It was stipulated that on October 22, 1956, Jauernig and wife had conveyed all their interest in this tract to Travis Realty Co., a Texas corporation owned by Edwin Schroeder and wife and G. B. Preissman and wife.

The land was taken on April 17, 1962, after the State had deposited the $29,000 which had been awarded by the Special Commissioners. The jury returned a verdict awarding appellees $59,720.00 for the land taken, and found severance damages of $132,901.00 to the remainder. The severance damages were greatly in excess of any evidence offered by appellees, and appellees voluntarily filed a remittitur whereby said severance damages were reduced to

$55,617.56. Judgment was accordingly entered for appellees for the sum of $115,337.56, less the sum of $29,000 deposited by the State.

Appellant urges improper and prejudicial argument by appellees' counsel; jury misconduct; improper restriction of its voir dire examination; prejudicial side-bar remarks by appellees' counsel; no evidence and insufficient evidence of severance damage to the remainder; improper admission of evidence relative to a protective ordinance passed by the City of San Antonio; and that the cumulative effect of the above errors caused an improper and excessive verdict.

Appellees admitted the State's right to condemn this land, and were given the right to open and close the arguments to the jury. Appellees' closing argument is set out in full in the record, and it is seen that it consists almost entirely of appeals to the jury to render a verdict favorable to appellees for reasons other than the evidence. These prejudicial appeals include statements to the effect that the laws of Texas do not permit a landowner to recover just compensation and that even if the jury returned a verdict as suggested by counsel, appellees would not receive justice; the State of Texas is a big, powerful organization and the appellees are just flesh and blood humans who must be protected by the jurors who are also flesh and blood humans; the State had taken land from counsel's children without adequate compensation and his life was devoted to remedying this wrong; as well as improper personal attacks upon State's counsel.

The most prejudicial appeal was appellees' statements concerning the unjustness of Texas' condemnation law. Appellees' counsel, Mr. Street, stated to the jury: "There is no way in the world that you can get just compensation and make an owner *haul* in Texas in my opinion; not because of our Court, but because our legislature had not passed any remedial legislation—."

(State's attorney) Mr. Crowder: "I object to any further statements by counsel along this line. We have to abide by the law."

Mr. Street: "I say we abide by the law, but I'll say this—We will abide by the law. If my children and if Schroeder and Preissman were in Florida, New York and other places—"

Mr. Crowder: "Your Honor, I have to object—"

Mr. Street: "I don't mind him objecting. He has a right to object. I think I have a right to make comments of what is going to happen."

The Court: "Let's limit your comments."

Mr. Street: "Alright. I say that in this case the Court is bound by the law, and the Courts are bound by the statutes of Texas. I can't go any further under the circumstances, but I'll say one thing. I don't think there is any way on earth that Preissman and Schroeder can get just compensation under the statutes of the State of Texas as they exist; that is my opinion."

Further, just before closing, counsel stated: "If you put, for the first question, $56,692.00 what my friend Carlos thinks was the value of the property. If you put on the after value what—what Rhode, Lipscomb and Hart thought, $46,362 on the second question; if you put on the third $73,181.00, still it wouldn't be just compensation for these owners."

Appellees' counsel also appealed to the passion of the jury by attempting to array the weak against the strong, and by urging the jurors to consider themselves in the place of appellees. This was begun during testimony by cross-examination of appellant's witnesses to ask if they had ever made an appraisal for a *human being*. During closing argument Mr. Street said: "Now this is a case of the great sovereign

State of Texas against two human beings with red blood in their veins."

Further, he argued: "I want to say to Winston Crowder that I am not a bit worried about the great State of Texas as long as we can have six humans with flesh and blood—warm blood—because I say what individuals do these distinguished lawyers have to report back to; what individual do they have to? They report back to a man that is being paid like they are by the people of Texas. What does Jim Gardner and I face? We face two human beings and their wives for the rest of our lives as to whether or not we have tried to put a case here with the true facts."

Other references were made to contrast between the State and appellees, such as: "Why does the State of Texas, with all its power and money, not be able to get one testify for us? * * * Now, I say that all we are expecting is not any more than Berry would expect from this, not any more than the Ackermans will expect, not any more than the Smiths will expect, and not any more than anyone that doesn't want to roll over and play dead when the State of Texas sues them to take their property away from them forcibly."

■ It is seen that appellant did not secure a ruling from the trial court, or re-urge its objection or request an instruction from the trial court for the jury to disregard appellees' argument concerning the inadequacy of Texas condemnation laws. Appellees urge that appellant thereby waived any error in this argument. The rule concerning waiver of improper argument was restated recently by the Supreme Court in Turner v. Turner, 385 S.W.2d 230 (1965), as follows:

"Argument which could be properly cured by objection by opposing counsel and instruction by the trial judge is not reversible error in the absence of such objection. Unless the argument is incurable, a litigant will not be permitted to lie in wait, taking a chance on a favorable verdict, and, being disappointed, complain for the first time of improper argument in a motion for new trial."

See also Howsley & Jacobs v. Kendall, 376 S.W.2d 562 (Tex.1964); Howard v. Salmon, 359 S.W.2d 882 (Tex.Civ.App.1962).

■ We must therefore determine whether this argument was curable by proper instruction of the trial court. No longer do courts attempt to determine whether an argument is "curable" or "incurable" by placing it in a particular type or category. The applicable rule was stated by the Supreme Court in Texas Employers' Ins. Ass'n. v. Haywood, 153 Tex. 242, 266 S.W.2d 856 (1954), as follows: "The true test is the degree of prejudice flowing from the argument—whether the argument, considered in its proper setting, was reasonably calculated to cause such prejudice to the opposing litigant that a withdrawal by counsel or an instruction by the court, or both, could not eliminate the probability that it resulted in an improper verdict." See also Texas Sand Co. v. Shield, 381 S.W.2d 48 (Tex.1964).

■ Under this test, appellees' argument that they could not secure adequate compensation under Texas law for the taking of their land irretrievably prejudiced the State on the amount of damages to be awarded, which was the sole issue in dispute. No instruction of the court could have removed the prejudicial effects of the argument and therefore no instruction was necessary. Howsley & Jacobs v. Kendall, supra. It is further seen that after State's counsel objected to this prejudicial appeal, appellees' counsel continued with the same type of argument, although admitting the impropriety of same. This presents a situation analogous to that of Houseman v. Decuir, 155 Tex. 127, 283 S.W.2d 732 (1955), where the Supreme Court reversed the case after an improper argument was repeated, without objection, shortly follow-

ing the trial court's instruction to disregard counsel's improper remarks.

In Aultman v. Dallas Ry. & Terminal Co., 152 Tex. 509, 260 S.W.2d 596 (1953), it was held that Rule 434, Texas Rules of Civil Procedure was applicable to an assignment of error complaining of improper argument and that before a judgment will be reversed the argument must be improper and must be such as to satisfy the reviewing court, after a review of the entire record, that the improper argument was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment in the case.

We are satisfied, after a review of the entire record before us, that this improper argument was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. The issue of damages was hotly contested. The statement of facts, consisting of over 1000 pages, is devoted almost entirely to this issue. Appellant produced three appraisal witnesses who testified that the land taken was of the value of from $13,175 to $15,500. On the other hand, appellees called seven appraisal witnesses who found the value to be between $42,720 and $65,692. The question of severance damages was even more disputed, in that appellant's witnesses testified that the remainder was enhanced and not damaged, whereas appellees' witnesses found severance damages of $73,181 to $87,818. The reasons given by appellees' witnesses to show damage to the remainder were far from certain. It is significant that the jury found the value of the land taken in complete accordance with appellees' witnesses, and found severance damages greatly in excess of appellees' own witnesses. Appellees voluntarily filed a remittitur of over $77,000. Still the judgment of $115,337.56 is in sharp contrast to appellees' total investment of $10,000 in this entire tract of land.

A similar result of reversible argument is reached by applying these tests to appellees' improper and prejudicial appeal for the flesh and blood jurors to protect appellees from the big and powerful State. In Texas General Indemnity Co. v. Savell, Tex.Civ.App., 348 S.W.2d 202, wr. ref. n. r. e., this Court held a similar type appeal to passion to be reversible.

It is further our opinion that the cumulative effect of the improper appeals made in appellees' closing argument could not have been cured by instructions from the trial court, and that this improper argument was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. Howard v. Salmon, supra; Southern Pacific Co. v. Hubbard, 156 Tex. 525, 297 S.W.2d 120 (1956). Mr. Street's argument is set forth in a bill of exception containing over twenty-one pages. It is seen that only a few lines of same are devoted to a discussion of the evidence. Instead, it consists almost entirely of prejudicial and inflammatory appeals to the jury. In addition to those parts quoted, appellees' counsel charged a conspiracy by the State and its appraisers against any red-blooded landowner who didn't "knuckle under to the regimentation of the government" and submit to the "legal surgery." There were unwarranted personal attacks made on State's counsel, and improper references were made to the righteous motives of appellees' counsel in representing the landowners. All of this indicates a studied effort to prejudice the jury in favor of appellees by these improper appeals and thereby increase their damages. The result is fully demonstrated in the verdict.

In view of a retrial of this case, it is unnecessary to discuss appellant's other points which complain of errors that will probably not recur on a subsequent trial of this case.

The judgment of the trial court is reversed and the cause remanded for a new trial.