In the Matter of the MARRIAGE OF Havon Paul KNIGHTON and Donna Maria Knighton and In the Interest of P.I.K. and P.A.K.

No. 07–82–0392–CV.

Court of Appeals of Texas, Amarillo.

Dec. 31, 1984.

Rehearing granted in Part and Overruled in Part Jan. 30, 1985.

Robert E. Goodfriend, Ruth Abboud Cross, Akin, Gump, Strauss, Hauer & Feld, Dallas, for appellant.

---

1. Mrs. Knighton testified that the church suggests three tithes of ten percent each, one to go to the church, one to be saved by the individual and used to attend various church festivals and

R.C. Hamilton, Kolander & Hamilton, P.C., Amarillo, for appellee.

Before DODSON, COUNTISS and BOYD, JJ.

COUNTISS, Justice.

This is a divorce case. Appellant Donna Maria Knighton attacks, by twelve points of error, that portion of the judgment by which, consistent with the jury verdict, her former husband, appellee Havon Paul Knighton, was appointed managing conservator of their two minor sons. Because we have concluded that Mr. Knighton's attorney exceeded the bounds of permissible jury argument, we reverse and remand.

Mrs. Knighton is a member of the Worldwide Church of God, a denomination headquartered in Pasadena, California, and led by Mr. Herbert W. Armstrong. Mrs. Knighton's religious beliefs, the teachings of her church, the personality of its leader and her private religious thoughts from a personal diary that came into Mr. Knighton's hands were the focal points of the trial. From the record before us, it appears that, as pertinent to this appeal, the Worldwide Church of God is a Christian church that advances a fairly strict set of tenets, advocates a three-tiered tithing policy [1] and observes a Friday evening to Saturday evening Sabbath. The record does not disclose any policies or practices of the church that could be construed as physically harmful to Mrs. Knighton or her children.

The final jury argument by Mr. Knighton's counsel was, in its entirety, an attack upon Mrs. Knighton's church and her religious beliefs. Over unsuccessful objections to his use of the term "cult" and his characterizations of the church as "designed to collect money," counsel told the jury in part:

Up until now in this trial, I have called this a religious belief or a religion.

one to be donated to needy widows and children of the church. Mr. Knighton never permitted Mrs. Knighton to tithe anything, however.

That's not the truth. The truth is, it's a cult. It's a cult designed to collect money.

      \*     \*     \*     \*     \*     \*

Let me tell you why it is a cult. This group even makes the ministers send the money to Pasadena, even their—the money they collect, they've got to send it to California, and Mr. Armstrong sends back what he wants them to have. If that's not the first characteristic of a cult, I've never seen it.

      \*     \*     \*     \*     \*     \*

He tells the people that they are going to be persecuted for these beliefs, for taking these feasts. They recognize that the world thinks they're foolish for doing this.

      \*     \*     \*     \*     \*     \*

They admit that the world looks at them just like the Nazis looked at the Jews. What more definition would you want of a cult than that? And they call it a religion.

We're not ashamed. That was in the evidence. She said it. We're not ashamed. Society is structured where we don't fit.

Think of that. She wrote it in her book. We don't fit. And then are you going to fit these two childs—children in something like that?

The only way to break the structure that the world has against this cult is by bucking the system.

      \*     \*     \*     \*     \*     \*

You are going to condemn these two children to this kind of life, and you're going to condemn them.

Her mother was in it. Her uncles were in it. Remember, she first denied her uncle was a minister, but then how could you forget her uncle was a minister when she stayed with him in Tennes-

see last November? But she denied it at first.

One of her cousins is an official in the Ambassador College right today, and she says she has four cousins that were ministers. And she's going to raise these children in this faith.

Now, the two most important people didn't come here today. You haven't seen them, and that's these two little boys.

Now, all I want you to do is to give them a choice, to give them a choice at religious freedom.

If you give them to this wife, you certainly will deny them a choice, and they will be condemned. Maybe they might escape later on, but look what situation they're going to be in at that time.

      \*     \*     \*     \*     \*     \*

But on your oath as jurors and from your common, human experiences and knowledges, the worst thing you could do would be to condemn these two children to figuratively being burned at the stake.

The foregoing argument, says Mrs. Knighton by her points of error one, two and four, was so improper, prejudicial and inflammatory that it deprived her of a fair trial. We agree.

In *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 839 (Tex.1979), the Supreme Court listed the elements a complainant must establish in order to demonstrate a reversibly erroneous jury argument. There must be (1) error (2) that was not invited or provoked, (3) that was preserved by proper trial predicate (such as objection, motion to instruct or motion for mistrial) and (4) was not curable by instruction, withdrawal of the statement or reprimand by the court.[2] In analyzing the harmfulness of the argument, the appellate court will consider the length, repetitiveness and

---

**2.** As we understand element (3), an overruled objection will satisfy the element. If, however, the objection is sustained, the objector should then request an instruction to the jury and follow it with a motion for mistrial. Even with the

predicates required by element (3), the appellate court will still analyze the argument under element (4) to determine whether it was so prejudicial that nothing could cure the error.

cumulative effect of the argument, its probable effect on a material finding and, from the entire record, the relative strength of the case. "From all of these factors, the complainant must show that the probability that the improper argument caused harm is greater than the probability that the verdict was grounded on the proper proceedings and evidence." *Standard Fire Ins. Co. v. Reese, supra,* at 840.

■ In applying the stated principles, we note at the outset that elements (2) and (3) are satisfied. Mrs. Knighton did not invite or provoke Mr. Knighton's trial tactics and she preserved her complaint by objection sufficient to preserve error. *Houseman v. De Cuir,* 155 Tex. 127, 283 S.W.2d 732, 735 (1955). In determining whether the argument was erroneous, the first requirement of *Standard Fire Ins. Co. v. Reese,* we are especially cognizant, in this case, of those rules of law that forbid an appeal to religious prejudice, *Safety Casualty Co. v. Wright,* 138 Tex. 492, 160 S.W.2d 238, 243 (1942); *Texas Employers' Insurance Association v. Jones,* 361 S.W.2d 725, 727 (Tex. Civ.App.—Waco 1962, writ ref'd n.r.e.); *Carson v. Amberson,* 148 S.W.2d 972, 974 (Tex.Civ.App.—San Antonio 1941, writ dism'd judgmt cor.), or a misrepresentation of the factors that a jury may consider in reaching its decision, *Younger Brothers, Inc. v. Myers,* 159 Tex. 585, 324 S.W.2d 546, 549 (1959); *World Wide Tire Co. v. Brown,* 644 S.W.2d 144, 146 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). We apply those rules in this case to enforce a fundamental principle: The State cannot prefer the religious views of one parent over the other in deciding the best interest of the child. *Watts v. Watts,* 563 S.W.2d 314, 317 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.); *Bevan v. Bevan,* 283 S.W.2d 305, 310 (Tex.Civ.App.—San Antonio 1955, writ ref'd n.r.e.).

■ After reviewing the entire record, we conclude that the argument was erroneous. There is nothing in this record to suggest that Mrs. Knighton's religious beliefs were harmful to the children. Yet the argument was a blatant appeal to the jury to deprive Mrs. Knighton of the managing conservatorship of her children because of those religious beliefs. The jury was told several times that Mrs. Knighton belonged to a cult and was warned that it would be condemning the children, denying them religious freedom and figuratively burning them at the stake if it named Mrs. Knighton as their managing conservator. Such an argument violates all of the principles discussed above.

The final inquiry, then, is whether the argument was so prejudicial that reversal is required. We note, again, that Mr. Knighton's pursuit of Mrs. Knighton's religious beliefs consumed most of the trial and all of his counsel's closing argument. The jury's attention was continually focused on the matter and it had little else before it from Mr. Knighton. It is probable, indeed almost certain, that counsel's inflammatory argument, especially his frequent use of a word so laden with negative implications as "cult," led to the verdict in question. Thus, we must conclude that the erroneous argument requires reversal.

Points of error one, two and four are sustained. Because we have found reversible error on common law grounds, we do not reach Mrs. Knighton's contentions, in points three and five, that the argument produced constitutional violations. *Horton v. Horton,* 625 S.W.2d 78, 79 (Tex.App.—Fort Worth 1981, writ ref'd n.r.e.). Nor do we dispose of her remaining six points which, *if sustained, would produce no greater relief than is being granted.* We observe, however, that many of the matters complained of in points six through twelve were not correctly preserved in the trial court and it would be premature for us to rule on them before the trial judge is given an opportunity to do so by proper objection or request.

The judgment is reversed and the case is remanded for new trial.

## ON MOTION FOR REHEARING

By his motion for rehearing Mr. Knighton raises one issue that requires attention

by the Court. He contends the reversal, if there must be one, should be limited to that portion of the trial court's judgment decreeing conservatorship of the minor children, because that was the only contested issue brought to this Court. In her response, Mrs. Knighton agrees. We also agree and amend our opinion as specified below.

■ It is clear that a trial court cannot divide a divorce case into various segments and enter separate, appealable, judgments for each piece. *Marriage of Johnson,* 595 S.W.2d 900, 902–03 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.). On appeal, however, the appellate court may affirm the divorce decree, and sever and order a retrial of property issues, *McKnight v. McKnight,* 543 S.W.2d 863, 864, 868 (Tex. 1976); *Roach v. Roach,* 672 S.W.2d 524, 532 (Tex.App.—Amarillo 1984, no writ), or conservatorship issues. *Lipshy v. Lipshy,* 525 S.W.2d 222, 223–24 (Tex.Civ.App.—Dallas 1975, writ dism'd).

Accordingly, Mr. Knighton's motion for rehearing is granted to the extent that the portion of the trial court's judgment granting the divorce and dividing the marital property of the parties is affirmed. The portion of the trial court's judgment determining conservatorship of the minor children of the parties is reversed and the case is remanded for retrial of all issues pertinent to conservatorship, possession and support of the children. In all other respects, Mr. Knighton's motion for rehearing is overruled.