Helen GREESON et al., Appellants,

v.

TEXAS & PACIFIC RAILWAY COMPANY, Appellee.

No. 5232.

Court of Civil Appeals of Texas.

El Paso.

Jan. 15, 1958.

Rehearing Denied March 5, 1958.

616

John J. Watts, W. R. Barnes, Odessa, Curtis White, Dallas, for appellants.

Hill D. Hudson, Pecos, McDonald & Shafer, Odessa, for appellee.

HAMILTON, Chief Justice.

This suit is for damages brought by Helen Greeson for herself and minor children, and for the parents of the deceased, Jasper Everett Greeson, growing out of the death of Greeson, husband of said Helen Greeson, as the result of a train-truck collision which occurred in Ector County, Texas, on the Texas and Pacific Railroad at a place known as the Duoro Crossing, about ten miles west of Odessa, Texas. United States Fidelity & Guaranty Company intervened in the suit to recover what had been paid as compensation benefits growing out of Greeson's death, and El Paso Natural Gas Company intervened in the suit to recover for damages to tractor, trailer and ditch digger.

The jury, in answer to special issues, absolved the defendant railroad company of all acts of negligence alleged by the plaintiff, except it found that the placing of the rear of the freight train on the passing track within 30 feet of the crossing was negligence, and that such negligence was a proximate cause of the collision. The jury further found that said crossing was extrahazardous. The issues of discovered peril were answered in favor of the defendant railroad. In respect to the defensive issues submitted, the jury found that the deceased, Greeson, failed to keep a proper lookout, and that such failure was a proximate cause of the collision. The jury found that Greeson, after having stopped, proceeded to cross while the train was within approximately 1,500 feet of the crossing and emitting a signal audible from such distance, and by reason of its speed and nearness to such crossing constituted an immediate hazard; and further found that such action was a proximate cause of the collision. The jury also found that as Greeson attempted to cross, he should, by the exercise of ordinary care, have known the danger involved in such attempt, and that in proceeding to cross he was negligent, and that such negligence was a proximate cause of the collision. Damages found by the jury to have been suffered by appellants totaled $212,000. On these findings of the jury, the court rendered judgment for the defendant, Texas and Pacific Railway Company, from which the appellants have perfected their appeal.

Appellants contend that the trial court was in error in not granting appellants judgment on the verdict, their contention being that the jury having found that the crossing in question was extrahazardous, any findings of contributory negligence on the part of the deceased were immaterial, and should have been ignored by the court in entering its judgment. We disagree with the appellants on this contention. Regardless of the findings of the jury on contributory negligence of the deceased, in order for the appellants to have a verdict in their favor, there must be some findings of the jury upon which the court could base a judgment against the appellee. In this case the jury found that the speed of the train was not negligence; that the failure of the railroad to have a flagman at the crossing was not negligence; that the engine crew did not fail to sound the whistle or to ring the bell at and for the required statutory distance. The jury further found that the fireman and engineer both kept a proper lookout. The only negligence found against the appellee railroad was that the placement of the freight train on the passing track 30 feet from the crossing was negligence, and that such negligence was a proximate cause of the accident. These findings of the jury could not form the basis of a judgment for appellants, because it has long been the rule of law in Texas that the mere obstructing of a crossing by a railroad does not constitute ground for recovery and

cannot be, standing alone, the basis of a judgment. In the case of Texas & Pacific Railway Co. v. Boyle, Tex.Civ.App., 29 S. W.2d 927, 930 (writ dismissed), this court announced such a rule in a similar case. In that case, freight cars were left on the side track in such a manner as to prevent the driver of the plaintiff's truck from seeing the approaching train. They found that the railway was negligent in permitting such obstruction, which negligence was a proximate cause of the accident. The jury further found that the defendant properly operated its train, as was found by the jury in the instant case. Judge Walthall, in reversing the verdict for the plaintiff, uses the following language:

"Can a judgment predicated on a bare jury finding that the railroad company was negligent in permitting obstructions on its right of way; and that such negligence was the proximate cause of the injury, as a matter of law, sustain a Judgment for damages, when the balance of the verdict expressly finds on all issues submitted that the railroad company was not negligent in any particular in operating the train on and across the crossing on the occasion in question? We are of the opinion that this question should be answered in the negative * * *. 'It (the obstruction of the crossing) is merely a matter to be considered on the question whether there was negligence in the operation of a train at the crossing.' The operation of the train at the crossing under all the facts is the controlling issue in the case."

The cases of Galveston, H. & S. A. Railway Co. v. McCrorey, Tex.Com.App., 23 S.W.2d 691, and Wichita Falls & Southern Railway Co. v. Anderson, Tex.Civ.App., 144 S.W.2d 441, lay down the same rule. We find no cases in Texas contrary to this rule.

Appellants contend, further, that the jury having found that the crossing in question was an extrahazardous crossing, and since the appellee did not show affirmatively that it used extraordinary means to signal the approach of their trains then appellee should be held liable as a matter of law, regardless of whether or not deceased was guilty of contributory negligence. We do not find that any of the cases cited by appellants so hold. The only issue requested by appellants on the maintenance of the crossing in connection with the issue on extrahazardous crossing was submitted to the jury. That issue was whether or not appellee was negligent in failing to have a flagman at such crossing. The jury answered that issue in favor of appellee. It seems to be the law that the railroad is not held liable as a matter of law because of a hazardous crossing, but in order to hold a railroad liable on the maintenance of a crossing there must first be a finding that the crossing was extrahazardous, and then that the railroad was negligent in the maintenance of such crossing; that is, by failing to maintain a flagman, mechanical signaling device, etc. Finto v. Texas & N. O. Ry. Co., Tex.Civ.App., 265 S.W.2d 606; Attebery v. Henwood, Tex.Civ.App., 177 S.W.2d 95. Finding no merit in appellants' contention that judgment should be entered for appellants on the verdict, we overrule all of appellants' points making such contention.

In the alternative, appellants contend that the case should be remanded for a new trial, principally on the ground that findings of contributory negligence on the part of deceased are in conflict with the finding of the jury that the crossing in question was extrahazardous, and also on the ground of no evidence to support such findings, and insufficiency of the evidence, as well as the finding of contributory negligence on the part of deceased being against the great weight of the testimony. Our courts have uniformly held that where the deceased is found to be guilty of contributory negligence, and such contributory negligence was a proximate cause of the

accident, such finding is controlling. In the case of Wortham v. Bull, Tex.Civ.App., 19 S.W.2d 211, 212 (error refused), it is held:

"Generally speaking, the defense of contributory negligence is defeated only by the doctrine of discovered peril, which issue is not involved in this case."

In the instant case, of course, as stated above, the issues on discovered peril were found by the jury in favor of the appellee. None of the cases cited by appellants hold that the finding of an extrahazardous crossing is sufficient to override the finding by the jury of contributory negligence proximately causing the collision. In the case of McMahan v. Texas & N. O. Ry. Co., 138 Tex. 626, 161 S.W.2d 70, by the Commission of Appeals, the jury found that the crossing was more than ordinarily dangerous as a nighttime crossing, and found the railway to be guilty of negligence in several instances in the manner of maintaining the crossing, and that such failures were each a proximate cause of the collision; yet the jury having found the plaintiff guilty of contributory negligence, the court held the plaintiff could not recover.

■ The jury found that the deceased, at the time in question, failed to keep a proper lookout. The court had defined, in its charge, "proper lookout" to mean, "such a lookout as a person of ordinary prudence would keep under the same or similar circumstances." In other words, the jury found the deceased failed to keep a proper lookout under the circumstances of the hazardous crossing as it existed at the time in question. The evidence shows that the deceased had used this crossing numerous times. There is certainly no contention that he could not see the cars on the passing track. There is further evidence that the fireman and engineer on defendant's train could see the deceased's truck at all times prior to the collision, and evidently the jury believed that the deceased could have seen the train had he kept the proper lookout, even though it may not have been as plainly visible as it would have been if the freight train had not been parked on the side track. We think the evidence ample to support the jury's finding on this issue of the failure of deceased to keep a proper lookout. The jury found, in answer to other issues, that deceased was negligent; but, since we find the issue on proper lookout to be controlling, we will not discuss the other findings with reference to negligence of the deceased.

■ Another point raised by appellants complains of error of the trial court in overruling appellants' oral motion to have all exhibits sent to the jury room upon retirement of the jury to consider its verdict. We overrule this point, first, because the record does not show that any such oral motion was overruled; second, upon appellants' discovery that one of the exhibits had inadvertently not been given to the jury, they failed to call the matter to the court's attention, or to the attention of the attorney representing appellee, although the jury was still out and had not returned its verdict when appellants discovered that the exhibit had not been given to the jury. Thus, the appellants waived any right they had to insist upon any assignment of error pertaining thereto.

■ Appellants raise several points complaining of the argument of counsel for appellee. The most serious point, it appears to us, is raised in connection with the issues on discovered peril. The argument complained of is as follows:

"Look when you come down to issues 23 about, 24 and 25, along in there, on issues inquiring as to Lowke and to Jones. They are issues inquiring that if they discovered and knew all of the situation and that after they knew it and knew the man could not

get away, that he was there and they were going to kill him that they didn't do anything about it. What is that? This is first, in my humble opinion, a crime; secondly —"

After counsel for appellants objected to the argument and were overruled, counsel for appellee continued as follows:

"No, Mr. White says that they never did see him. Neither Lowke or Jones ever saw Mr. Greeson. In one breath and then he said in the next breath, oh, you, they discovered him and knew of their discovery and knew he was there and deliberately failed to do the things that they should have done if there was any, and just run him down. I don't believe that you believe that."

Objection to this argument was overruled by the court. We have concluded that the argument amounts to only a conclusion by counsel of the effect on the engineer of the affirmative finding on discovered peril, rather than a statement of the law. This court has previously so held, in the case of Saenger v. Dallas Railway & Terminal Co., Tex. Civ.App., 67 S.W.2d 351, 352, in which the Supreme Court refused a writ. In that case the appellees argued:

"This is the same as a criminal case. They ought to be over in the Criminal Court. Are you going to convict this motorman that was running that street car that ran into the plaintiff's automobile and charge him with a crime and ruin him?"

In that case, this court said, page 352:

"We think the remark of counsel does not present reversible error. That is the extent of our holding. We must accredit the jury as being reasonably intelligent. The jury certainly knew the motorman was not on trial for any crime (the remark of counsel did not say he was); that the issues submitted to them were issues of negligence of appellee street car company. The remark of counsel does not indicate that facts in proof were asserted. The conclusion of counsel as to the effect of the finding upon the motorman was but an inference drawn by counsel. No injury is shown to have resulted to appellant from the remark. The record affirmatively shows, we think, that the remark had no harmful effect."

The Commission of Appeals, in the case of Sugarland Industries v. Daily, 135 Tex. 532, 143 S.W.2d 931, 932, characterizes the argument,

"To my way of seeing it, if you will analyze that question, it is mighty near asking you 'did he deliberately and consciously cause the accident.' "

as an expression of the opinion or belief of counsel, and not as a statement of the law, and that such argument was not erroneous. That court, at page 933, quotes from an opinion of Associate Justice Greenwood, in the case of Wilson v. Southern Traction Co., 111 Tex. 361, 367, 234 S.W. 663, 665, as follows:

"For, we do not see how conduct can be characterized otherwise than as exhibiting reckless indifference to destroying human life or causing human suffering where it consists in failure to use ordinary care to avoid the infliction of death or serious bodily injury on another in a position of imminent peril, after it is realized that the imperiled person cannot or will not save himself."

See also: Cannady v. Dallas Railway & Terminal Co., Tex.Civ.App., 219 S.W.2d 816, 822 (no writ history); and McMillion v. Wilkinson, Tex.Civ.App., 135 S.W.2d 231 (writ dismissed, judgment correct.) Based on the above authorities, we hold that the argument of counsel amounted only to a conclusion, or opinion, of counsel, and not statements of the law; therefore, not reversible error.

■ Appellants' Point No. 2 complains that the argument of counsel for appellee that they were surprised by the testimony of the witness, Jones, and the statement that Jones had discussed his testimony with them prior to testifying, was outside the record and was unsworn testimony from counsel. In order to understand this point, it is necessary to set out facts about which the defendant's witness, Jones, who was engineer on the train in question, was testifying. Jones had testified that the truck in which the deceased, Greeson, was riding at the time the train was approaching the crossing was travelling west on a caliche road which was south of defendant's railroad and parallel to said railroad, prior to the time the said truck made its turn to the north to cross the railroad. All the other witnesses who saw the collision, including the defendant's fireman, had testified that said truck was travelling in an easterly direction on said caliche road prior to making its turn to cross the railroad tracks. Appellants maintain that the statement of counsel expressing its surprise at the engineer's testimony would indicate that he had told them a different story when they talked to him, and that this constituted, in effect, unsworn testimony. We think even if the court was in error in not sustaining the objection to such argument, that the error was not shown to be harmful. There was really no issue between appellants and appellee as to the direction the truck was travelling prior to its turn to cross the railroad, some 98 feet south of the railroad. All parties maintained in the trial that the truck was travelling east as the train was travelling west. At any rate, the direction in which the truck was travelling prior to its attempt to cross the railroad was not material to any issue in the case.

The next argument complained of by appellants is the argument of counsel for appellee wherein, in his argument, he stated that a corporation is nothing but a group of people who have combined their savings— ministers, lawyers, doctors, workmen and widows, and after objection was overruled by the court, counsel continued arguing as follows:

"So that, after all, after you get down to it, it is a case between individuals."

We have been cited no case which has passed on this type of argument. However, it appears to us that the statement made by counsel is nothing more than is common knowledge, and we do not see how appellants could be harmed by such argument.

■ Appellants' Point No. 3 complains of the following argument:

"Now what sort of investigation has been made in this case and who tried to show you the truth about the cars? In the first place, John Watts doesn't need any help when it comes to investigation or trying any lawsuit on God's green earth, but he had Mr. Barnes, who is able counselor himself, and he had Mr. White, the attorney for El Paso Natural Gas Company, and they are plaintiffs here too. Lord, they found a negro man out in California in the Navy that had to say something about this thing and we'll discuss him a moment later but they brought only Bell, Gandy, the boy that was working for Gandy, I forget his name, the colored boy, this man from California, this sailor, and Thompson here that said those cars were box cars."

"Just in passing, I call again your attention to a test of credibility. As I say and as you know, the thing that attracted everybody's attention was that poor man in anguish there. I don't think there's any doubt in anybody's mind about that and yet this guy here, this sailor, comes in here, imported from California and I'm not surprised that you got him from that state, he come in here and says, why, sure they were box cars, there wasn't

a tank car in that lot. I looked particularly and what does he say happened? He said that when he got there, when he came up around that underpass and back over here and across, that they were pulling Mr. Greeson from where? Out of the cab of that truck. Time after time he made that statement. Now if he's so unsure about, or so dead wrong may I say, about the thing and the person and the objects that attracted his main attention necessarily, how reliable is his testimony about the tanks? All right, but the resources of the credibility of these lawyers, and I take it they of the El Paso Natural Gas Company to assist in this investigation."

The court, in qualifying appellants' Bills of Exception to said argument, said that:

"The counsel for Plaintiffs approached the bench and made the stated objection and motion in an undertone to the Court without the hearing of Defendant's counsel or the jury. Neither such objection, nor motion, were called to the attention of the Defendant's counsel until long after the close of all arguments for both sides in the cause."

Appellants contend that this argument was an appeal to racial prejudice and an accusation that one of the appellants, El Paso Natural Gas Company, and appellants' counsel, had imported a witness, George Hood, to swear a lie. The trial court, in overruling objections, evidently thought that the argument was not an appeal to racial prejudice, nor was it an accusation that the appellants' lawyers were guilty of subornation. On the motion for new trial, it was testified by Mr. Hudson, one of the counsel for appellee, that the witness, George Hood, who was a sailor in the United States Navy, appeared to him to be a Negro, and that he honestly thought him to be such. There was testimony on said

motion for new trial that he was not a Negro. It was also shown that there was a Negro woman on the jury. The argument itself does not, in our opinion, seem to be an appeal to racial prejudice. As to calling the witness a Negro, or a colored boy, we think that counsel making the argument should have had an opportunity to correct his statement, which he would have had, had the objection been made in his hearing. Appellee contends that the argument attacking the credibility of the witness, George Hood, was justified on the ground that the witness testified contrary to what another witness of appellants had testified to, with reference to the location of Greeson immediately after the collision. The witness Thompson had testified that he pulled Greeson out from under the truck—that he was not in the cab. The witness, George Hood, testified that when he arrived on the scene, one or two men were pulling Greeson out of the cab of the truck. The material point on which the witness, George Hood, testified was the distance from the crossing of the caboose on the string of cars on the passing track. He testified the distance to be 20 feet. Other witnesses testified the distance to be 30 feet. However, the jury found that the parking of the cars at a distance of 30 feet from the crossing was negligence on the part of the railroad and was a proximate cause of the collision. Consequently, regardless of whether or not this attack on the credibility of the witness, George Hood, was improper, no harm resulted to the appellants on account thereof.

■ Appellants' Point No. 4 also complains that the court was in error in not sustaining their objection to argument of counsel attacking the credibility of the witness, Moseley, and referring to him as "black." The argument complained of by appellants is too long to set out here, but the substance of it was that the witnesses, Grady, a white man, and Moseley, a colored man, both testified, on being asked about whether the train blew the whistle, that they heard "a faint whistle down yonder."

The particular argument complained of as being objectionable was:

"But if you come in here and say faint, we heard a faint whistle down yonder, and another man comes in here and says we heard a faint whistle down yonder, be he black or white, I don't care, then there's something wrong in Denmark and somebody has prepared a little story to tell."

Appellants' counsel, in his argument, had referred to the witness Moseley as being a "colored boy." We do not think the term "be he black or white", used in the sense it was used here, is derogatory to the colored race or is intended to incite racial prejudice. We overrule this point.

All other points raised by appellants as to improper argument are overruled without discussion, as we do not think they are of sufficient merit to warrant discussion. We also overrule appellants' points raised as to the cumulative effect of argument of counsel. The entire argument of appellee's counsel was filed with the record, and we have carefully read same and, taken as a whole, we have concluded that the cumulative effect of all the argument complained of, whether improper or not, was not calculated to cause, and probably did not cause, the rendition of an improper judgment in the case. It is noted that no argument complained of by appellants related to contributory negligence issue, of failure to keep a proper lookout, found against appellants. We therefore hold that the trial court was correct in not granting appellants a new trial based on appellants' complaints as to argument of appellee's counsel. Rule 503, Texas Rules of Civil Procedure; Sterrett v. East Texas Motor Freight Lines, 150 Tex. 12, 236 S.W.2d 776; Aultman v. Dallas Railway & Terminal Co., 152 Tex. 509, 260 S.W.2d 596; Goforth v. Alvey, 153 Tex. 449, 271 S.W.2d 404.

The judgment of the trial court is affirmed.