**Arthur WATKINS, Jr., et al., Appellants,**

v.

**William D. GOOLSBY et al., Appellees.**

**No. 3541.**

Court of Civil Appeals of Texas.

Eastland.

June 24, 1960.

Rehearing Denied July 29, 1960.

COLLINGS, Justice. .

This is an appeal from an order sustaining a plea of privilege. Arthur Watkins, Jr., and Albert L. Turner brought suit in the District Court of Harris County against William D. Goolsby and Merle Bobbit, seeking to recover personal and property damages in the sum of $32,200, alleged to have been sustained and proximately caused by negligence of the defendants in a collision between an automobile and an ambulance. The defendants filed pleas of privilege to be sued in the county of their residence. Plaintiffs duly filed a controverting affidavit seeking to retain venue in Harris County under the provisions of Article 1995, subd. 9a, Vernon's Ann.Civ.St. After hearing before the court without a jury, it was ordered that the cause be transferred to the District Court of Houston County. Plaintiffs have appealed.

Appellants contend that the action of the court in sustaining the pleas of privilege is contrary to law. They urge that there was no evidence of probative force to sustain the order and in the alternative that it was against the great weight and preponderance of the evidence.

■ When a plea of privilege is filed, a plaintiff seeking to retain venue in a county other than the county of a defendant's residence has the burden of establishing by a preponderance of the evidence the existence of the venue facts in compliance with the requirements of some subdivision of Article 1995, supra. In the instant case appellants sought to maintain venue in the county where suit was brought under the provisions of section 9a of the statute. The venue facts which plaintiffs had the burden to establish in order to retain venue in Harris County therefore were (1) that an act or omission of negligence occurred in the county where suit was filed; (2) that such act or omission was that of the defendant in person or that of his servant, agent or representative, acting within the scope of his employment; and (3) that such negli-

Paul Floyd, Trotter, Cramer & Childs, Baker & Branch, Houston, for appellants.

Baker, Botts, Andrews & Shepherd, Houston, for appellees.

gence was a proximate cause of plaintiff's injury.

It is undisputed that the collision between the ambulance belonging to appellant Turner and the Ford pickup owned by Merle Bobbit and operated by William D. Goolsby occurred in Harris County. It was admitted by appellees that at the time of the collision Goolsby was employed by Bobbit and was operating the Ford pickup with the consent of Bobbit and in the furtherance of Bobbit's business. The remaining venue facts which appellants had the burden to establish were that Goolsby was guilty of some act or omission of negligence and that such negligence proximately caused the accident and injuries complained of.

The evidence shows that appellant Albert Turner operated a funeral home and ambulance service at 7512 Lockwood Street in Houston, Texas. Arthur Watkins, Jr., was employed by Turner on a part time basis and his duties included driving a 1953 Ford ambulance. On July 25, 1958, Turner sent Watkins to Pete's Auto Supply to pick up some auto parts needed to repair Turner's personal automobile. The supply store was approximately 3 miles from Turner's place of business. Watkins drove the ambulance to the auto supply store, secured the auto parts and then started back to the funeral home.

While Watkins was returning to the funeral home and about thirty minutes after he had left to pick up the auto parts, Turner received a call from an establishment called the Rose Bowl. The person calling requested an ambulance and Turner then notified a central dispatcher to transmit a radio message to Watkins in the ambulance, instructing Watkins that he had an emergency call and for him to return to the office. Turner did not give the address of the Rose Bowl nor did he request Watkins to telephone the office for the address. This was done, according to Turner, to insure that some other ambulance did not pick up the call and beat Watkins to the scene, thereby depriving Turner of the business. Appellants do not contend that the procedure followed would increase the speed of the ambulance service. Actually the evidence shows that the nearest and best way to the Rose Bowl from where Watkins received the message was not by way of the funeral home.

Watkins testified that after receiving the call he started north on Whipprecht Street at a speed of about 20 to 25 miles per hour; that about a block and a half before reaching the intersection of Whipprecht Street and North Loop he reduced his speed to 15 or 20 miles per hour; that when he reached the intersection in question he was traveling at between 5 and 8 miles per hour. However, a witness by the name of A. B. Chisum stated that he had seen the ambulance and heard the siren; that he was observing the ambulance 200 feet before it reached the intersection and estimated that it was at the time traveling at a speed of 45 to 50 miles per hour. There was a stop sign at the intersection of Whipprecht Street and North Loop for traffic going north on Whipprecht Street. Watkins did not observe the stop sign and stated that he did not see the Ford pickup being driven east by William D. Goolsby, to Watkins' left, on North Loop until he was right at the intersection; that the front of his ambulance was at the south edge of the intersection at the time. Watkins testified that when he first saw the Ford pickup it was about 4 or 5 car lengths from the intersection and traveling at an estimated speed of 25 to 30 miles per hour. Watkins proceeded into the intersection without stopping and momentarily directed his attention to his right to observe any cars approaching from the east. North Loop at the point of the intersection with Whipprecht is a four lane through thoroughfare. The lanes for eastbound traffic are divided from the lanes for westbound traffic by an esplanade. After looking to his right, Watkins again looked to his left and at that time saw the Ford

pickup approximately one or two car lengths away. Watkins then applied his brakes in an attempt to stop and avoid a collision but was unable to do so. The automobile operated by Goolsby struck the ambulance at about the middle at a time when the front bumper of the ambulance was about even with the esplanade.

The question of Watkins' negligence is not here material. His actions and conduct are material only to the extent that they may properly be of assistance in determining the question of whether Goolsby was guilty of negligence proximately causing the collision and injuries complained of.

Appellant contends that the evidence shows negligence as a matter of law on the part of Goolsby proximately causing the collision. They urge that the record shows conclusively that their ambulance was operating under a permit as an emergency vehicle issued by the State Board of Health in compliance with the statutes of Texas, the material portions of which are as follows:

V.A.T.S., Art. 6701d, Uniform Act Regulating Traffic on Highways, Section 2(d), Authorized Emergency Vehicle, defines such vehicles as:

"Vehicles of the fire department (fire patrol), police vehicles, public and private ambulances for which permits have been issued by the State Board of Health, and emergency vehicles of municipal departments or public service corporations as are designated or authorized by the governing body of an incorporated city."

V.A.T.S., Art. 6701d, Uniform Act Regulating Traffic on Highways, Art. II, Section 24(b) provides:

"The driver of any authorized emergency vehicle when responding to an emergency call upon approaching a red or stop signal or any stop signs shall slow down as necessary for safety but may proceed cautiously past such red or stop sign or signal. At other times drivers of authorized emergency vehicles shall stop in obedience to a stop sign or signal."

The same section contains the admonition:

"(c) No driver of any authorized emergency vehicle shall assume any special privilege under this act except when such vehicle is operated in response to an emergency call or in the immediate pursuit of an actual or suspected violator of the law."

V.A.T.S., Art. 6701d, Uniform Act Regulating Traffic on Highways, Art. VIII, Sec. 75, Operation of Vehicles and Street Cars on Approach of Authorized Emergency Vehicles, provides:

"(a) Upon the immediate approach of an authorized emergency vehicle equipped with at least one lighted lamp exhibiting red light visible under normal atmospheric conditions from a distance of five hundred (500) feet to the front of such vehicle and/or when the driver is giving audible signal by siren, exhaust, whistle, or bell:

"1. The driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the roadway clear of any intersection and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer."

Appellants contend that the evidence shows that at the time of the collision Watkins was operating the ambulance on an emergency run; that the emergency warning signals on the ambulance, consisting of red lights and a siren, were in operation and that by reason of section 75 of the statute as above set out there was an absolute duty on the part of Goolsby to yield the right-of-way to appellants' authorized emergency

vehicle as Goolsby proceeded east on North Loop toward the intersection with Whipprecht Street. Appellants contend that in failing to yield the right-of-way Goolsby was guilty of negligence per se and that such negligence was, as a matter of law, the proximate cause of the collision. We cannot agree with that contention.

In the first place the evidence shows conclusively that at the time of the collision Watkins' destination was not the scene of any emergency. His destination was the office of Turner's funeral home to receive instructions. The purpose of Watkins' going to the funeral home was mercenary. If this does not establish conclusively that appellants' vehicle was not on an emergency call, it certainly raises a fact issue on the question sufficient to support the implied finding by the trial court that he was not at the time of the accident on an emergency call.

■ Assuming for the sake of argument, however, that Watkins was on an emergency call at the time of the collision, it is true as a general proposition that drivers of other motor vehicles have the duty to yield the right-of-way to emergency vehicles. Even so, we cannot agree with appellants' contention that such duty became absolute upon a showing simply that the warning devices of the emergency vehicle were put into operation. In our opinion the following quotations from 60 C.J.S. Motor Vehicles §§ 371, 373, at pages 924 and 928 state the correct rule:

"In order to impress on such a driver the duty of yielding the right-of-way, he must know or in the exercise of ordinary prudence should have known that a public service vehicle was approaching in response to a call, and he must have a reasonable opportunity to * * * yield the right of way."

\* \* \* \* \* \*

"The driver of such other vehicle is not, however, under an absolute duty to recognize the superior rights of fire apparatus, and may proceed in an otherwise lawful manner unless by the reasonable exercise of the senses of sight and hearing he should have noticed or heard warning to the contrary, and, in the absence of a suitable warning of the presence of the fire department vehicle, as a careful, prudent person, he has the right to assume that no vehicle would be operated against the traffic lights."

■ The only evidence concerning the manner in which Goolsby was driving the Ford pickup was the testimony of appellant Watkins, an adversely interested witness. He testified that when he was at the south edge of the intersection he saw Goolsby, who was then four or five car lengths from the intersection and that Goolsby was traveling at about 25 or 30 miles per hour. Watkins further testified that he was then driving at a speed of only 5 to 8 miles per hour, but the witness Chisum testified that the ambulance was traveling at a speed of 45 to 50 miles per hour when it was only about 200 feet from the intersection. This evidence was in conflict with Watkins' testimony concerning his speed at that point and certainly raised a fact issue as to the relative position and speed of the two motor vehicles at the time Watkins first saw the Ford pickup. If the ambulance was traveling at 45 or 50 miles per hour, as Chisum stated, then it would of necessity have been much farther south of the intersection when Goolsby was only four or five car lengths west of the intersection moving at a speed of 25 to 30 miles per hour. Goolsby could not have seen the emergency red light signals on the ambulance until it was relatively close to the intersection.

The evidence showed that the siren on the ambulance was of a type that is activated by pressing a button and then taking the foot off the button after which the siren operates for a length of time estimated

to be sufficient to cover about five blocks before it would be necessary to press the button again. Mr. Chisum testified that he saw the ambulance coming up Whipprecht Street; that he heard the siren before he saw the ambulance; that although a customer drove into the station and he looked away from the ambulance when it was about 200 feet from the intersection he heard the siren until he heard the crash of the collision. He did not testify concerning the volume of the sound at any given point. Mr. Chisum's position at the filling station on the northeast corner of the intersection was such that he could see the ambulance some distance down Whipprecht Street and there was likewise nothing to obstruct or to lessen the sound of the siren. His opportunity to see and hear and ascertain that an emergency vehicle was approaching in response to a call was much better than that of Goolsby. Goolsby was approaching the intersection at a right angle to the path of the ambulance traveling on Whipprecht Street and may not have known, and might not by the exercise of ordinary prudence have known, of the approach of the ambulance on Whipprecht Street. Goolsby was approaching from the west on a four lane through street, and there was a stop sign at the intersection for northbound traffic on Whipprecht Street. Under these circumstances, we are of the opinion that negligence of Goolsby proximately causing the collision and injuries complained of was not conclusively shown. We overrule appellants' points urging that the action of the trial court in sustaining appellees' pleas of privilege was contrary to law and that there was no evidence to sustain the order. After examination of all the evidence in the record, we overrule appellants' contention that the findings of the trial court were erroneous in that they were against the great weight and preponderance of the evidence.

The judgment of the trial court is affirmed.