Adolph Edward PRASEK, Appellant,

v.

W. W. DUDLEY, Appellee.

No. 122.

Court of Civil Appeals of Texas.

Corpus Christi.

Sept. 23, 1965.

First Rehearing Denied Oct. 21, 1965.

Second Motion for Rehearing Denied
Nov. 18, 1965.

John H. Holloway and Richard Haynes, Houston, for appellant.

Finis E. Cowan of Baker, Botts, Shepherd & Coates, Houston, J. J. Duckett, El Campo, for appellee.

GREEN, Chief Justice.

Appellant Adolph Edward Prasek, plaintiff below, sued appellee W. W. Dudley, defendant below, to recover for personal injuries and property damages sustained in an automobile collision on July 24, 1961, at the intersection of Jackson (Highway 59) and Merchant Streets in El Campo, Wharton County, Texas. The parties will hereafter be designated as in the trial court. Both plaintiff and defendant were volunteer firemen, and it was stipulated at the close of the evidence in the trial court that both parties were, at the time of the accident, driving authorized emergency vehicles and that each was proceeding to a fire in response to an emergency call.

The jury found each party guilty of negligence proximately causing the collision. Based on such verdict, the trial court rendered judgment for the defendant. Plaintiff timely presented his motion for new trial, based in part on jury misconduct. The motion was overruled, and plaintiff has appealed.

The collision occurred about 8:30 o'clock P.M. Defendant was driving east on Jackson Street, a main thoroughfare in El Cam-

po, which is also the highway leading from Victoria and points south to Houston. There is evidence that because of the alarm, the traffic lights on Jackson Street had been locked all four ways red by a control switch at the fire house, and defendant testified and the evidence showed that he drove through several red lights at a fast speed as he was proceeding to the fire.

Plaintiff approached and entered the intersection headed south on Merchant Street at a rate of speed variously estimated by witnesses at from 10 to 35 miles per hour. The evidence conflicted on whether he entered on a red or green light. The two cars collided near the center of the intersection, as a result of which plaintiff received serious injuries.

In response to issues submitted, the jury found that defendant (1) turned to right just before collision, but it was not a proximate cause; (2) that he did not fail to turn left just before the collision; (3) that he operated his vehicle at a high, dangerous, and excessive rate of speed, and that it was a proximate cause; (4) that he properly applied his brakes; (5) that he was driving at a greater speed than a person of ordinary prudence would have driven under the circumstances, and that it was a proximate cause; (6) that defendant kept a proper lookout; (7) that defendant failed to slow down as necessary for safety on approaching the intersection, and it was a proximate cause; (8) that defendant did not fail to yield the right of way to plaintiff; (9) that defendant did not discover the perilous position of plaintiff within time to avoid the collision.

The jury found that plaintiff (1) failed to keep a proper lookout, and it was a proximate cause; (2) that he failed to properly apply his brakes, and it was a proximate cause; (3) that he operated his vehicle at a speed which should not have been employed under the circumstances, and it was a proximate cause; (4) that he failed to yield the right of way to defendant, however, no proximate cause issues were sub-

mitted; (5) that the traffic light was "red" when plaintiff entered the intersection; (6) that plaintiff failed to slow down as necessary for safety on approaching the red light, and it was a proximate cause and negligence; (7) that he failed to slow down or proceed with caution past the red light, and it was a proximate cause and negligence; (8) and, that plaintiff suffered damages of $14,600.00, and property damage of $800.00.

The jury further found that defendant's vehicle was equipped with a red light visible under normal atmospheric conditions from a distance of 500 feet to the front of the vehicle; that defendant's vehicle was equipped with a siren emitting an audible signal which could have been heard by an ordinary person similarly situated as plaintiff; that just before the collision defendant was faced with a sudden emergency, and operated his vehicle accordingly, and that such sudden emergency was not the sole proximate cause of the collision; and, that such collision was not the result of an unavoidable accident.

Plaintiff's first five points allege error in the trial court's failure to disregard the jury findings that (1) the plaintiff failed to keep a proper lookout, and proximate cause; (2) he failed to make proper application of his brakes, and proximate cause; (3) he operated his vehicle at an excessive rate of speed under the circumstances, and proximate cause; (4) he did not yield the right of way, and (5) the traffic light facing plaintiff was red as he entered the intersection. His points are based on the proposition that there was no evidence to support such findings, and that they were against the great weight and preponderance of the evidence so as to be manifestly wrong and unjust, and, as to issue No. 33 finding that plaintiff failed to yield the right of way, that no negligence or proximate cause issues were submitted to the jury. Plaintiff's 15th, 17th, and 21st points complain of error in the court's instructions on issue 19, inquiring whether defendant failed to yield the right of way, and on is-

sue 33. Point 16 complains of the submission of issue 34, inquiring whether the traffic light was red, or was it green, facing plaintiff as he entered the intersection, and of the succeeding issues conditioned on a finding that the light was red.

Plaintiff testified by deposition that he did not see defendant's car until it had actually hit him, although the evidence is clear, and the jury found, that defendant was coming noisily down the highway at a fast rate of speed with a red light flashing to the front, and there was nothing between plaintiff and defendant as plaintiff entered the intersection to prevent him seeing and hearing the other car and properly applying his brakes in time to prevent the accident. He testified his eyesight and hearing were good, and that he could see "quite a ways" to his right, the direction from which defendant was coming.

■ Although plaintiff testified he applied his brakes and slowed down to about 10 miles per hour as he entered the intersection, other eye witnesses testified he never reduced his speed from the time he approached the intersection until the occurrence of the collision. Two witnesses testified to the effect that the light facing plaintiff was red at the time of the collision, although other witnesses gave testimony that it was green. Other testimony, to be discussed later, was introduced to show that the traffic lights on Jackson Street were locked on four way red when the fire alarm was sounded. Whether the rate of speed at which the plaintiff entered the intersection was greater than that at which a man of reasonable prudence in the exercise of ordinary care would have entered under the same or similar circumstances was a fact issue under the testimony to be determined by the jury. The same is true with reference to the matter of proper application of the brakes, proper lookout, and the question of the color of the light facing plaintiff as he entered the intersection.

The right of way issues were submitted under the provisions of Vernon's Ann.Civ. St., art. 6701d, § 75(a), subdiv. 1, to the effect that upon the immediate approach of an emergency vehicle equipped with at least one lighted lamp exhibiting red light visible under normal atmospheric conditions from a distance of 500 feet to the front, and when the driver of every other vehicle shall yield the right of way, etc.

■ The evidence is abundant that defendant's car was so equipped, and that the siren was being loudly sounded. Plaintiff's car was not equipped with a red light or siren. The court's instructions on these issues copied almost verbatim Art. 6701d, § 20, § 75(a), § 75(a) (1), and § 75(b). Such submission of the right of way issue under the facts of this case was proper. Watkins v. Goolsby, Tex.Civ.App., 337 S.W.2d 363; Craker v. City Transportation Company of Dallas, Tex.Civ.App., 316 S.W.2d 447, writ ref. n. r. e.

■ However, since the jury found plaintiff guilty of several other acts of negligence proximately causing the accident, any error as to issue 33 concerning plaintiff failing to yield the right of way would not affect the entry of judgment against plaintiff. Rule 434. Cloud v. Zellers, 158 Tex. 253, 309 S.W.2d 806. For like reason, it is not necessary for us to determine whether the omitted issues of negligence and proximate cause following special issue no. 33 should be deemed as found by the trial court in such manner as to support the judgment. Rule 279, Texas Rules of Civil Procedure.

Points 1, 2, 3, 4, 5, 15, 16, 17 and 21 are overruled.

■ Plaintiff's objections to the submission of the sudden emergency issues become immaterial and fail to show reversible error in view of the jury's finding that such emergency was not the sole cause of the accident, and because of the specific findings of negligence of the defendant. Stephens v. McCarter, Tex.Civ.App., 355 S.

W.2d 93; City Transportation Company of Dallas v. Vatsures, Tex.Civ.App., 278 S. W.2d 373; writ dis.; Williams v. Voight, Tex.Civ.App., 264 S.W.2d 454, writ ref. n. r. e. Because of such findings, the court could not use the answers of the jury on the sudden emergency issue to defeat plaintiff's cause of action, if any. However, other findings of the jury of contributory negligence and proximate cause were sufficient to prevent plaintiff from securing a favorable judgment, and his points 6, and 19 concerning the submission of sudden emergency issues are overruled.

■ By his 18th point, plaintiff alleges error in the submission to the jury of the special issue of unavoidable accident. The issue was answered favorably to plaintiff, and he is not justified in making such complaint here. "A party may complain in a reviewing court only of errors that injuriously affect him. He may not complain of errors that are favorable to him." 4 Tex.Jur.2d, Appeal and Error—Civil, § 763, p. 268. The point is overruled.

■ Plaintiff's 13th point reads as follows:

"The Court erred and abused its discretion in admitting the hearsay testimony, conclusions and speculation testimony of the witness, Mr. Turner, that the traffic lights were mechanically locked on four way red at time of the collision, and other testimony relating thereto, over Plaintiff's objections contained at pages 386 to 390 of the Statement of Facts together with other objections made, all as reflected by the record in this case."

Marvin Turner, whose job was to remain at the fire station, take fire calls, sound alarms, and operate the switch for the purpose of locking traffic lights on four way red during emergencies, was called by defendant to testify by deposition. Plaintiff objected to his evidence on the grounds that (1) the testimony would be hearsay and immaterial since he could not verify the lights or controlling devices were in proper working order; (2) no predicate to show he could distinguish between sirens on various vehicles so as to say he was still hearing Dudley's siren at the time he had the switch on; (3) witness testimony is speculative and invades the province of the jury as to fact issue as to color of the light facing plaintiff; (4) that witness, being several blocks away from the scene of the collision, could not have any knowledge of the actual color of the traffic lights during the times involved. The objections were overruled, and plaintiff permitted to take his bills of exception to Turner's testimony in the absence of the jury. Objections were also made when the testimony was offered in the presence of the jury, and exception taken by plaintiff.

Turner, over such objections, testified to his duties as stated above, and about his knowledge of and experience with the switch and pilot light, the purpose and functions of which were to lock the traffic lights on red as aforesaid during emergencies. He stated that after the fire alarm was given, he took the action necessary to lock all the traffic lights on Highway 59 (Jackson Street) red on all four sides, and left the switch on as long as he heard any sirens on vehicles moving along the highway. He testified that from his position, he could clearly hear the noise made by the sirens on such cars. After all sirens on vehicles moving on Jackson Street had become silent, he operated the switch in such manner as to place the lights back in normal operation.

Defendant further put in evidence Turner's testimony that from where he was stationed, he could not see the lights and had no knowledge from personal observation that all traffic lights along Jackson Street were on red at the time of the collision; that he did not know whether the switch panel and all operational controls relating to the traffic lights were properly working; that he was about three blocks from the scene of the accident, with windows and doors open and could hear the noises coming from Jackson Street;

and that he did not know the color of the light facing plaintiff as he entered the intersection.

The effect of Turner's testimony was that after sounding the fire alarm and hearing the sirens of emergency vehicles headed toward the fire, he performed his duty of pulling a switch the normal effect of which would result in locking the traffic lights on Jackson Street on red on all four sides, and that after the noise of the emergency vehicles had died down, he released the switch, which would normally, if everything was in mechanically proper working order, place the lights back in normal condition. He did not attempt to tell the jury that the lights actually were red on all four sides at the time of the accident, or that plaintiff entered the intersection on a red light. It is not necessary that he be able to state with scientific certainty that the mechanical processes of the emergency traffic light system were all in perfect operation; his testimony as to the normal effect of his throwing the switch, with his admission that he could not testify, not being on the street to see, what actually happened, would be relevant and material as some evidence that plaintiff's light was, in fact, red at the time he entered the intersection. 23 Tex.Jur.2d, Evidence, § 124. Other evidence that the four-way lock system was working was provided by the testimony of eye-witnesses Howard and Sarino.

Plaintiff's point No. 13 is overruled.

By his 7th, 8th, 9th, 10th, 11th, 12th, and 14th points, plaintiff complains of argument of defendant's counsel in addressing the jury, and says such argument was improper, prejudicial, and inflammatory.

■ Defense counsel, in speaking of plaintiff's attorney, made the remark, * * * "In this case I think you are trying to punish Mr. Dudley for doing his duty as a conscientious fireman and citizen * * *". Plaintiff's objection was sustained, and the trial court instructed the jury to disregard the statement. Error, if any in the argument, was cured by such instruction. Texas Employers' Insurance Ass'n v. Haywood, 153 Tex. 242, 266 S.W. 2d 856; Younger Brothers, Inc., v. Myers, 159 Tex. 585, 324 S.W.2d 546.

■ Another remark of same counsel was,

* * * "I can't believe you would want to saddle Mr. Dudley with $81,-000 on the word of witnesses who fell out of a beer joint that night." * * *

Plaintiff's objection was that this was highly prejudicial, and that there was no evidence that any of them had been drinking. Defense counsel, in reply to the objection stated to the court and jury:

* * * "I didn't say drinking." * * *

The objection was properly overruled. Several of plaintiff's witnesses had come out of a cafe where beer was sold when the fire alarm had sounded. The misuse of the words "fell out" was perhaps improper, but no harm can be shown to have been caused plaintiff thereby. Aultman v. Dallas Railway & Terminal Co., 152 Tex. 509, 260 S.W.2d 596.

■ Other remarks made by defense counsel in their jury arguments included within plaintiff's points of error are:

Mr. Duckett: * * * "Again Mr. Prasek made a mistake, in his deposition he said twenty miles an hour, and then told you only five or ten, and it is impossible for me to believe any fireman in a sound mind would be going to a fire in low gear. That is how impossible your case is, Mr. Holloway."

Mr. Holloway: "I am going to object to him, and I want to ask the Court to ask him to refrain from personal remarks about me or my case, it is not my case, it is highly prejudicial an attack upon me as an officer of the Court for representing this man."

Mr. Duckett: "We will say Plaintiff's case."

Mr. Holloway: "I appreciate that."
* * *

The court made no ruling on the objection. No error is presented by the point.

 Mr. Cowan (for defendant): * * * "Whether or not this case —the plaintiffs have presented a case that is legitimate or one based on inaccuracies and false allegations, let's think about the testimony of the witnesses and see which testimony makes sense, which testimony seems believable, and which testimony doesn't."

Mr. Holloway: "I would like to make a motion to Court. We object to Counsel's statement about the facts and allegations in the case as being false, it is direct reference to a statement of fact that is not based upon any evidence in the case, we ask the Court to instruct the Jury to disregard such statement, it is a reflection both on myself for representing this man as an officer of the Court, and it is a direct reflection on plaintiff's character."

The Court: "Overruled."

Mr. Cowan: "We are not reflecting upon the Plaintiff's character. Mr. Prasek did not put this case together, we have told you and we are telling you again we think Mr. Prasek is a good man and simply made a serious mistake * * *"

Mr. Holloway: "Your Honor, we object to the statement of Counsel that Mr. Prasek had nothing to do putting the case together, and pointing to Counsel as being the person directly responsible. We consider it an attack * * *"

The Court: "Sustained, and I direct you, Ladies and Gentlemen of the Jury, not to consider it in the trial of the case." * * *

We find no error here. As to the first part, counsel was merely expressing his views of the testimony, which is one of the purposes of argument. The court's action in instructing the jury not to consider the next statement of defense counsel eliminated error, if any, as to that remark. Younger Brothers, Inc. v. Myers, supra; Aultman v. Dallas Railway and Terminal Co., supra; Greeson v. Texas & Pacific Railway Company, Tex.Civ.App., 310 S. W.2d 615, writ ref. n. r. e.

 Again, Mr. Duckett (for defense): "The only sign of any chance I can see, if they actually had a green light, or Mr. Prasek had a green light. If he had a green light, it wasn't the fault of Mr. Dudley, it was the city's fault.

Mr. Holloway: "I object to that, Your Honor, it is evidence outside the record, and I ask the Jury be instructed to disregard his last statement."

The Court: "Overrule the objection."

Mr. Duckett: * * * "And if it is the City's fault, you have the wrong boy in Court, and in spite of Mr. Holloway's objections during the time I was talking, I will gladly join you, Mr. Holloway, in a suit against the city."

Mr. Holloway: "I object to the last statement of Counsel."

The Court: "Sustain the objection."

Mr. Holloway: "And ask the Jury be instructed to disregard it."

The Court: "You are so instructed."

The first part of this argument was a fair deduction from Turner's testimony that it was his duty to pull the switch to lock all lights on Jackson Street four way red. In the event the mechanism failed, this argument implied that the fault would not be Dudley's who testified he knew of the rule requiring the switch to be on dur-

ing emergencies, and relied on it, but those who had charge of the mechanism. No error appears. If there were error in the last statement, it was cured by the court's instruction. Younger Brothers, Inc. v. Myers, supra.

■ Plaintiff took objection to a number of other remarks of defense counsel, which are covered by points 10, 11, 12, and 14. In the interests of brevity, we state that we have carefully studied the statements, arguments, and authorities contained and cited in the briefs of both parties, and have read the complete jury arguments of defense counsel filed with us. We have found no error presented by plaintiff's points addressed to the arguments of such a nature as to have probably influenced the jury in reaching a verdict, nor do we find that the nature of the arguments complained of was such as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Aultman v. Dallas Railway & Terminal Co., Tex.Sup.Ct., supra; Younger Brothers, Inc. v. Myers, Tex.Sup.Ct., supra; Greeson v. Texas & Pacific Railway Company, supra. All of said points are overruled.

Plaintiff's 22nd, 23rd, and 24th points concern alleged jury misconduct resulting in injury to plaintiff's cause, in three particulars: (1) that jurors from El Campo gave testimony in the jury room during the deliberations concerning the manner in which the traffic lights in El Campo were mechanically operated during emergencies to support Turner's testimony, which information was given during the time the jurors were deliberating on all of the issues of plaintiff's contributory negligence, and that such discussion influenced juror McVey in his vote on issues of contributory negligence; (2) that El Campo jurors stated in the jury room from their personal knowledge that the witnesses who testified concerning the color of the traffic light when plaintiff entered the intersection would have been able to see, from the positions they testified they were in, the color of the traffic light; (3) the jurors agreed that since both parties were guilty of negligence, plaintiff's damages should be reduced as a penalty for his negligence.

Only two jurors were placed on the witness stand at the hearing. Juror McVey testified that when the jury reached issue No. 34, inquiring whether the light was red or green, he was undecided as to whether to answer "red" or "green". Prior to the vote on the issue, according to McVey some jurors from El Campo volunteered information of their personal knowledge as to the working of these lights during an emergency fire call in order to bolster Turner's testimony, and McVey said that such statements influenced his vote. McVey did not say specifically what was stated by any of the other jurors, saying only in general terms that information was furnished about how the lights were operated during emergencies. McVey's testimony was inconsistent as to at what point in the deliberations the voluntary statements of the El Campo jurors began. When questioned by plaintiff's attorney, he stated as follows:

"Q Mr. McVey, 25 was the lookout question, now I understand from what you just told Counsel the red light in all probability came up during that issue, wasn't that right?

A That is right.

Q That was the first issue relating to Mr. Prasek. Now, it is also your testimony today that your best recollection the Jury could have been discussing the red light situation in connection with his lookout because—if he had a green light he would have a different lookout than with a red light?

A Yes, sir.

Q So your recollection is that is where the jury started discus-

sions with the El Campo about what they knew about the light?

A That's right.

Q You discussed it in connection with other issues, and it culminated with the issue on the red light?

"A Certainly."

However, on being questioned by defense counsel, he testified:

Mr. Cowan: "Is it your best recollection, however, understanding nobody made a record of what you said, but is it your best understanding and recollection all the discussions with reference to the experience of the El Campo jurors with reference to the light locked on four way red did take place with reference to Special Issue 34?

Mr. Holloway: "I object to leading, he has him on voir dire, but at the same time his questions are leading.

The Court: "Overruled.

"A Yes, sir.

Mr. Cowan: "Now, at the time you answered 34, had you answered all of the previous issues down to there?

"A Yes, sir.

Plaintiff also placed juror Brost on the stand. A definite conflict exists between the testimony of these two jurors concerning what statements were made by the El Campo jurors on the proposition raised by plaintiff's first contention, stated above. On this point Brost testified:

"Q Do you recall the El Campo jurors telling anyone there in the jury room about their knowledge concerning this traffic light?

A Yes, in during cases of emergency the lights were supposed to be locked on red, in that respect.
* * *

Q All right. Also in that connection, did you hear the El Campo jurors tell the panel in the presence of all the jurors as to how the lights mechanically operated in that connection, that they were four way reds, and when turned on and under what conditions they were four way red?

A That was brought out at the trial, that wouldn't be particularly the El Campo jurors.

Q Did you confirm that fact with the El Campo jurors?

A I wouldn't think it would be confirmed with the El Campo jurors."

Thus, according to Brost, the only statement made by any juror from El Campo from his personal knowledge as to how the lights were mechanically operated during a fire emergency was that they were *supposed* to be locked on red. This was not in contest, for plaintiff Prasek testified, as shown on page 267, statement of facts, as follows:

"Q Now, did you know Mr. Marvin Turner?

A Yes, sir.

Q Was it or not Mr. Turner's job with the Fire Department upon the sounding of an emergency call to throw a switch locking the lights on red on all four sides?"

A Yes, sir."

Several of plaintiff's witnesses, including Johnny Macha and William Kossler, gave similar testimony.

■ Plaintiff shows no injury to himself by the only statement made by the ju-

rors concerning the emergency locking of the lights, according to juror Brost, when it coincided almost exactly with plaintiff's own testimony, and the testimony of plaintiff's witnesses. Rule 327, T.R.C.P.

Juror McVey's testimony is inconsistent and contradictory within itself as to whether the jurors had already answered all issues preceding issue 34 when the discussion by the El Campo jurors first occurred. Thus, this was an issue of fact to be determined by the trial judge. If the jurors had already answered the preceding issues, as McVey said at one stage of his testimony, they had found the plaintiff guilty of negligence proximately causing the accident in several particulars, i. e., failure to keep a proper look-out, failure to properly apply his brakes, excessive rate of speed under the circumstances, any one of which would have prevented plaintiff from securing a favorable judgment. Under such circumstances, no injury can be shown to have been suffered by plaintiff, and the misconduct of the jury does not present reversible error. Rule 327, T.R.C.P.; State v. O'Dowd, 158 Tex. 348, 312 S.W.2d 217; Roy L. Jones Truck Line v. Johnson, Tex.Civ.App., 225 S.W.2d 888, 895, writ ref. n. r. e.; McClenahan v. Byrum, Tex.Civ.App., 307 S.W.2d 117; McDonald, Texas Civil Practice, Vol. 3, § 14.16, page 1254.

The discrepancy between the testimony of the two jurors as to what was said also created an issue of fact as to whether the misconduct occurred as testified by McVey, or as testified to by Brost. In the absence of express findings of fact and conclusions of law, it is presumed on appeal that the trial court found all controverted facts in support of the judgment. Brawley v. Bowen, Tex.Sup.Ct., 387 S.W. 2d 383; Younger Brothers, Inc. v. Myers, 159 Tex. 585, 324 S.W.2d 546.

As to the second contention of misconduct juror Brost testified that one or more of the El Campo jurors stated from personal knowledge that persons standing in the locations that the eye witnesses who testified to the color of the light said they were standing would have been able from such locations to determine the color of the light facing both parties as they entered the intersection. Brost further stated that he did not recollect at what stage of the jury deliberation these remarks were made. McVey did not give any testimony of this matter.

On the trial, four witnesses in addition to plaintiff testified that the light facing plaintiff was green as he entered the intersection. These witnesses placed themselves on the sidewalk of Jackson Street at various distances from 90 to 120 feet from the intersection and, as shown by the transcript of defense jury argument, defense attorneys argued strenuously to the jury that from the spots where plaintiff's witnesses were standing, they would have been physically unable to see the color of the light facing Prasek as he entered the intersection.

Both of defendant's eye witnesses who testified concerning the color of the light at the time of the collision placed themselves at the corner of the intersection where the collision took place, where no question could be raised as to whether they could see two sides of the light as they testified. Nowhere in the record does there appear any indication of any contention that they could not do so.

It therefore appears clear to us that these remarks made by El Campo jurors, although error, could not have caused injury to plaintiff, but that on the other hand, were more likely to be helpful to his cause. It was not the type of misconduct to make it reasonably appear that considering the evidence both on the hearing of the motion for new trial and the trial of the case, and from the record as a whole, probable injury resulted to plaintiff, or that an improper judgment was rendered as a result thereof. Rule 327 and 434; Allan v. Materials Transportation Company, Tex.Civ.

App., 372 S.W.2d 744. Also, it does not appear that this information was given prior to the time the jurors had answered the issues of plaintiff's contributory negligence which in the court's charge were prior to the issue of the color of the light. Mrs. Baird's Bread Company v. Hearn, 157 Tex. 159, 300 S.W.2d 646.

█ Plaintiff complains of jury misconduct also because both jurors who testified stated that in answering the damage issue, the jury took into consideration the fact that plaintiff, as well as defendant, was guilty of negligence proximately causing the accident, and that the damage figure was accordingly materially reduced as a penalty to plaintiff for his negligence. Since the damage issue became immaterial upon the answering the liability issues in the manner they were answered, misconduct, if any relating to the damage issue could not have caused injury to plaintiff, nor could it have led to the entry of an improper judgment. Rules 327, 434, T.R.C.P.; Navar v. State, Tex.Civ.App., 344 S.W.2d 188.

Points Nos. 22, 23, and 24 alleging reversible error as a result of jury misconduct, are overruled.

█ The trial court did not commit error in refusing plaintiff's request to file findings of facts and conclusions of law relating to the hearing on plaintiff's motion for new trial on alleged jury misconduct. Warner v. Plummer, Tex.Civ.App., 355 S.W.2d 817, writ ref. n. r. e.; Eichelberger v. Rankin, Tex.Civ.App., 278 S.W. 2d 278, writ ref. n. r. e. Plaintiff's 20th point, contending that it did, is overruled.

Judgment affirmed.

## ON MOTION FOR REHEARING

Appellant, in connection with his motion for rehearing, has filed a 43 page instrument styled "Appellant's Exceptions to Insufficiency of Fact Findings, and Motion under Rule 453 for Conclusions of Law and Findings of Fact on All Points of Error." Appellant, in addition to Rule 453, also invokes Rule 455, Texas Rules of Civil Procedure, and asks that we make certain further supplemental findings upon the points concerning the jury's findings of contributory negligence of appellant, of the admissibility of the testimony of the witness Turner, of the jury arguments of counsel for appellee, and of the alleged jury misconduct.

In our original opinion, we passed on and stated our findings as to all points of error contained in appellant's brief. We expressly found that the findings of the jury concerning the contributory negligence of appellant, together with the accompanying issues of proximate cause, were in each instance supported, both legally and factually, by the evidence. While we did not cite in re King's Estate, 150 Tex. 662, 244 S.W.2d 660, we were guided by that opinion in determining the factual sufficiency of the evidence. We adopt as our own all of the jury findings that we held to be material to the judgment of the trial court.

We discussed the testimony of the witness Turner, and expressly announced our findings concerning such evidence when viewed as a whole, and found that no reversible error was committed by the court in permitting its introduction.

We considered and ruled on every point concerning alleged error in the jury arguments of counsel for appellee. The fact that we did not copy the several pages of such argument that appellant would have us place in our opinion does not deprive appellant of his opportunity of assigning any alleged error of this Court in a petition for writ of error.

We passed on each point of appellant's concerning jury misconduct, and expressly found that, in view of the trial court's order overruling the motion for new trial, no reversible error was shown. Appellant insists that we should copy in further detail the testimony given by the two jurors in the hearing on his motion for new trial, and make findings conflicting with those contained in our opinion.

■ Appellant also asks that we recite in our opinion much testimony of plaintiff and his witnesses which conflict with conclusions made in our original opinion, and some of which relate to matters claimed to be reflected in undisputed testimony. It is not the duty of the Court of Civil Appeals, on a motion for additional findings of fact, to find facts that are undisputed, or recite evidence or make legal conclusions which may conflict with findings made. Nowlin v. Hall, 97 Tex. 441, 79 S.W. 806; Houston & T. C. Ry. Co. v. Davis, Tex. Civ.App., 32 S.W. 163, writ ref., 88 Tex. 593, 32 S.W. 510; McGill v. Castleberry, Tex.Civ.App., 111 S.W. 662, writ ref.; Wisegarver v. Yinger, Tex.Civ.App., 128 S.W. 1190, writ ref.; Order of United Commercial Travelers of America v. Roth, Tex. Civ.App., 159 S.W. 176; O'Fiel v. First Nat. Bank of Beaumont, Texas, Tex.Civ. App., 152 S.W.2d 475, writ dis. con. judg.; Gregory v. City of Garland, Tex.Civ.App., 333 S.W.2d 869, writ ref., n. r. e.; Thaxton v. Reed, Tex.Civ.App., 339 S.W.2d 241, writ ref., n. r. e.

While many of these decisions were made years prior to the adoption of the present Rules of Civil Procedure, they in such instances were based on statutes very similar to our Rules 453 and 455 as shown in such opinions.

In Nowlin v. Hall, supra, the Supreme Court, in discussing the statutes then in effect, similar to our Rules of Civil Procedure 453 and 455, said:

" 'The conclusions of fact,' which it is the duty of the Court of Civil Appeals to file in a proper case, does not mean the conclusions made by every issue raised by the evidence upon the trial, but the conclusions upon the issuable facts, made by the pleading and evidence. For example, let us take the ordinary case of a suit for damages for personal injuries, in which the plaintiff pleads that he has been injured, that his injuries were caused by the negligence of the defendant, and alleges his damages, and in which the defendant pleads the general issue and contributory negligence. A judgment is rendered for plaintiff, which is affirmed upon appeal. It seems to us that when the Court of Civil Appeals finds that there was negligence on part of the defendant, as alleged in the petition, and no contributory negligence on part of plaintiff, and that the amount of damages assessed by the jury is sustained by the evidence, they have announced every conclusion of fact which is required of them under the law."

The Court then proceeds to set out the points upon which the Court of Civil Appeals were requested to file its conclusions, and states:

"Some of these matters are shown by the undisputed evidence in the case, and some are found by the verdict which the court declined to set aside. Besides, these questions seem to be more in the nature of a cross-examination than of a request to file conclusions of fact. We think the court did not err in refusing to answer them."

We here repeat and confirm the findings and conclusions stated in our original opinion. We find that the evidence supports the jury's findings of contributory negligence of appellant proximately causing the accident in question, as held in our original opinion. We find that the trial court did not err in overruling appellant's motion for new trial due to alleged jury misconduct. We find no reversible error in the admission of Turner's testimony, nor in connection with any of appellant's points concerning jury argument. Other than that, appellant's request for supplemental findings and conclusions is denied.

Appellant's request for oral argument on his motion for rehearing is overruled.

Appellant's motion for rehearing is overruled.